OPINION
{¶ 1} This appeal is from an order entered by the Mahoning County Court of Common Pleas, Probate Division, on May 3, 2000, which resulted in a finding of contempt of court by Richard D. Goldberg from failing to comply with previous orders of the court. In that finding, Goldberg was found guilty of direct contempts of court and guilty beyond a reasonable doubt of criminal contempts of the court. The court ordered that Goldberg be sentenced to a term of imprisonment of 180 consecutive days to be served consecutively with any other order of either the court below or any other federal or state court, which has imposed a sentence upon him or may subsequently impose a sentence. The sentence was ordered to commence after completion of all other periods of actual physical incarceration. Goldberg is currently incarcerated in the Federal Correctional Institute at Morgantown, West Virginia,
 {¶ 2} This case was consolidated for hearing before this court with three other cases involving similar issues of contempt. However, since the facts in each case are somewhat different, although the law is generally the same in each instance, the cases will be considered separately in our opinions.
 {¶ 3} Appellant, Goldberg, asserts the following assignments of error:
 {¶ 4} "[1.] The Probate Court erred in finding Goldberg to be in contempt of court.
 {¶ 5} "[2.] The Probate Court erred in ordering Goldberg to be imprisoned for failure to pay a debt.
 {¶ 6} "[3.] The Probate Court erred by taking judicial notice of statements made in other cases.
 {¶ 7} "[4.] The Probate Court erred by failing to allow Goldberg basic procedural due process during the contempt hearing."
 {¶ 8} The Hunter case was considered in the Mahoning County Probate Court on December 14, 1998, where a motion and order approving the proposed settlement in a wrongful death action involving the estate of William R. Hunter, the deceased, was approved by the court. Attorney Goldberg was ordered to provide a report of the distribution of the settlement proceeds by December 24, 1998.
 {¶ 9} On June 17, 1999, the probate court vacated its order approving the wrongful death settlement finding that Goldberg failed to report and make the distributions ordered pursuant to the December 14, 1998 distribution order. In the vacated settlement order, the court ordered Goldberg to disgorge himself of the attorney fees and to pay amounts owed to the guardianship of two minors. Goldberg was to immediately deposit the total sum of $626,375.01 to the attorney for the Hunter estate who, in turn, was ordered to deposit the monies in a restricted bank account in the estate's name. Although a notice of appeal was filed from the June 17, 1999 judgment entry, the appeal was later voluntarily dismissed.
 {¶ 10} On October 19, 1999, the probate court amended its July 17, 1999 order regarding Goldberg's disgorging of attorney fees, finding that the correct amount to be disgorged by Goldberg was $473,033.33, not $349,250.
 {¶ 11} On January 3, 2000, the probate court ordered Goldberg to appear and show cause for why he should not be held in contempt. After a delay necessary to obtain Goldberg's presence, since he was incarcerated in Federal prison in West Virginia, on February 2, 2000, the probate court conducted a hearing on the contempt charges with Goldberg present and represented by counsel.
 {¶ 12} This case arose from a medical malpractice case, resulting in a wrongful death claim brought on behalf of the decedent William R. Hunter, who was survived by four adult children, Tammy L. Hunter, Laura J. Varga, Richard W. Hunter and Scott R. Hunter, as well as two minor children, Jason A. Hunter and Sheena L. Hunter. Goldberg was retained by the family of the decedent to pursue the medical malpractice and wrongful death claim. On October 31, 1997, the probate court appointed Tammy L. Hunter as executrix of her deceased's father estate. On May 15, 1998, the probate court approved a contingent fee agreement between Goldberg and the Hunter estate. The case was subsequently settled by Goldberg for $1.1 million, pending approval of the probate court. On October 9, 1998, an application to approve the settlement was filed by Goldberg and the hearing previously referred to was set for December 14, 1998. At that time, the court approved the wrongful death settlement in the amount of $1.1 million and ordered distribution as follows: (1) $223,625 to Tammy L. Hunter, executrix of the estate of William R. Hunter; (2) $41,480.55 to Laura J. Varga; (3) $41,480.55 to Richard W. Hunter; (4) $41,480.55 to Scott Hunter; (5) $138,562.50 to the guardianship account of Jason A. Hunter, a minor; (6) $138,562.51 to the guardianship account of Sheena L. Hunter, a minor; and (7) $473,033.33 to Goldberg for attorney fees. As previously noted, the probate court ordered the distribution of accounting to be filed on or before December 24, 1998, by attorney Goldberg.
 {¶ 13} On June 8, 1999, a hearing was held on Goldberg's failure to comply with the December 14, 1998 distribution order.
 {¶ 14} At the June 8, 1999 hearing, attorneys Ingram and Dunlap volunteered that they were not present to challenge the proceedings or that had Goldberg wrongfully taken money from the Hunter estate, but to determine based on the evidence in the court orders thereon what sums had to be repaid. They represented that they would pay whatever sums were ordered paid. Attorney Dunlap, in particular, stated that they would have the money to pay back all of Goldberg's victims and that they were in the process of liquidating Goldberg's assets and putting together a pool of money. Dunlap further stated that it all came down to a question of money and that they would have enough money to pay all of the victims.
 {¶ 15} The court cautioned Dunlap about making such pronouncements without knowing who all of the victims were and determining their losses. Dunlap responded by again asserting that it was only money, that they would have the money they needed. He informed the court as of that day he was already in possession of $400,000 of Goldberg's money, which he held in his attorney's trust account, that the money came from a transaction between Goldberg and Anthony Cafalo, involving the transfer of Goldberg's interest in some apartments, that Dunlap deposited those monies into his trust account, and that they would be used to pay the claims for these victims and any other victims.
 {¶ 16} Dunlap limited his participation in the proceedings of June 8, 1999, to entering his appearance on behalf of Goldberg and invoking Goldberg's Fifth Amendment privilege against self-incrimination. Goldberg was not present at that meeting. Dunlap did not participate otherwise in the hearing. At the conclusion thereof, based upon the evidence presented and Dunlap's acknowledgment on the record that he would comply with the court's orders to pay, the probate court determined that the minor, Jason Hunter, was to have received $138,562.50 and that the other minor, Sheena Hunter, was also to have received $138,562.51. Dunlap stated that he would pay the money to wherever the court directed him to pay it. The court specifically stated that the court had not approved any annuities being purchased and that the sums were to be placed in a separate interest bearing account under the name of the decedent's estate until further order of the court, which applied also to the sums due both minors, which was $277,125.01. Neither Goldberg nor Dunlap complied with either the court's order of June 8, 1999, or with Dunlap's representations that the money was available to make payment to all of the proper parties in the Hunter case. The orders of June 8, 1999 were reduced to writing and filed with the clerk on June 17, 1999 and duly served upon Goldberg and attorneys Ingram and Dunlap. As previously stated, Goldberg was ordered to disgorge himself of attorney fees and to pay over the amounts owed to the guardianships of both minors and to immediately deposit the total sum of $626,375.01 to attorney Kalasky, counsel for the attorney of the estate, who was then to deposit the money in a restricted bank account in the estate's name. The June 17, 1999 order specifically stated that parties and counsel were forewarned and cautioned that any failure to fully and literally comply with the orders shall be considered a direct contempt of court and dealt with accordingly.
 {¶ 17} On June 28, 1999, attorney Dunlap mailed a letter to the court which he expressed on behalf of Goldberg their intention not to comply with the part of the court's orders which directed Goldberg to disgorge and return fees he had taken in the instant estate but that they intended to appeal the court's orders in that regard. They did not within that letter, or at any other time, refuse to pay the sums due to minors in the sum of $277,125.01, but they did not comply. As previously stated, there was no appeal pursued from the June 17, 1999 order, which remained the law of the case even though it arguably was not a final appealable order.
 {¶ 18} At the February 2, 2000 contempt hearing, Goldberg was represented by Attorney Charles L. Richards. At the conclusion of that hearing, the court asked Richards, as counsel for Goldberg, who was also present but who also had asserted his Fifth Amendment rights, as to whether Goldberg had complied with the June 17, 1999 order. Richards responded by raising the defense that Goldberg was unable to pay asserting that, pursuant to his federal plea agreement in the criminal cases, Goldberg had forwarded about $700,000 of the $4.5 million due to an account managed by Federal Judge Polster. Richards also stated that National City Bank had obtained judgment against Goldberg in the amount of $4.6 million and alleged that the Mahoning County Probate Court was holding Goldberg's assets with respect to both the National City bank account and the First Federal Savings and Loan account. The court asked Richards if he had anything else to offer on his client's behalf. He stated that he did not, except that he believed that it would be unconstitutional to incarcerate a person to pay a civil debt.
 {¶ 19} With all of the interested parties present and represented and with appellant herein represented, the court pursued a stipulation agreement which was, with the exceptions noted hereafter, agreed to by all parties. Even Goldberg signed the stipulation agreement. There was no objection to making the order of June 17, 1999 part of the record, even though the probate court had already taken judicial notice of records of its court. Richards, on behalf of Goldberg, stated that the previous records of the court pertaining to this case should be made a part of the record as opposed to searching through related files, and that he had no objection thereto. Through Richards, Goldberg stipulated that the father of the decedent, Paul Hunter, was alive at the time and that his interest was not brought to the attention of the court at the time distribution of the settlement was requested. The record showed that distribution had been made to many of the beneficiaries and that, since interested parties were left out of the distribution, those beneficiaries might have to return some of that money due to a modified distribution order. All of those beneficiaries agreed that they would be willing to do so if the court so ordered.
 {¶ 20} In summation, at the February 2 contempt hearing, neither Richards nor Goldberg contested any facts contained either within the stipulation of the parties at that hearing or the facts giving rise to the June 17, 1999 order. Richards, on behalf of Goldberg, stipulated that the probate court had never approved an annuity for the $277,125.01 due the minor beneficiaries and that no annuity was ever purchased. Appellant's attorney was provided an opportunity to bring forth witnesses or to factually contest any stipulations but did not do so. The only arguments made for Goldberg by his counsel were legal arguments. Goldberg offered no evidence as to what funds Goldberg had or did not have to comply with the June 17, 1999 order other than the unsubstantiated claim that Goldberg's failure to comply was because all of his assets had been tied up by courts.
 {¶ 21} The record shows no refusal on the part of the probate court to deny Goldberg, through his attorney, the opportunity to present witnesses on any of the issues at hand, nor was there any request to do so. The case was taken under advisement by the court but it appeared that there was no contemplation that more evidence would be taken. All of the evidence pertinent to the issues was entered either by stipulation or by judicial notice of previous orders in the same court, the Mahoning County Probate Court.
 {¶ 22} Appellant's assignments of error will be considered separately in deciding this appeal.
 {¶ 23} Appellant's first assignment of error is that "the Probate Court erred in finding Goldberg to be in contempt of court." In conjunction with this assignment of error, appellant raises four issues: (1) the probate court did not prove Goldberg guilty of criminal contempt beyond a reasonable doubt; (2) Goldberg's conduct did not constitute direct contempt of court; (3) Goldberg cannot be held in contempt of court for failing to pay over that which he is entitled to have; and (4) the probate court did not have subject matter jurisdiction in the concealment action.
 {¶ 24} The trial court has the discretion to determine the kind and character of conduct which constitutes direct contempt of court.State ex rel. Seventh Urban, Inc. v. McFaul (1983), 5 Ohio St.3d 120,122, quoting State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus. An appellate court will not reverse a finding of contempt unless the trial court abused its discretion. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion involves more than an error of judgment. It constitutes an attitude on the part of the court that is unreasonable, unconscionable or arbitrary. Pembauer v.Leis (1982), 1 Ohio St.3d 89.
 {¶ 25} Contempt is a disregard of or disobeyance to an order or command with judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294. It is conduct which engenders disrespect for the administration of justice or which tends to embarrass, impede, or disturb a court in the performance of its functions. Denovchek v. Bd. of Trumbull Cty. Commrs.
(1988), 36 Ohio St.3d 14. Contempt may be classified as either civil or criminal. Criminal contempt sanctions operate as punishment for the completed act of disobeyance that is designed to vindicate the authority of the court. Criminal conduct is usually characterized by an unconditional prison sentence. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253-254. A finding of criminal contempt requires proof beyond a reasonable doubt.
 {¶ 26} In cases of criminal contempt, it must be shown that the contemptor intended to defy the court. Midland Steel Prods. Co. v.U.A.W. Local 486 (1991), 61 Ohio St.3d 121, paragraph two of the syllabus. The state of mind of an accused, including appellant's knowledge of the terms of the court order, may be proven by the circumstantial evidence. Midland Steel, supra, at 128. In this case, there was direct knowledge of the terms of the court orders.
 {¶ 27} In its May 3, 2000 contempt order, the probate court found Goldberg guilty of criminal contempt for: (1) failing to disclose and identify Paul Hunter and Brad D. Young as beneficiaries of the decedent's estate and/or his wrongful death claim; (2) in attempting to suborn the appearance of the executrix at the June 8, 1999 hearing in this case; (3) in failing to pay over and/or otherwise deposit the total sum of $277,125.01 for the minor beneficiaries, Jason and Sheena Hunter; (4) in failing to report what distribution he had made pursuant to the magistrate's decision by January 15, 1999; (5) in interfering with hindering, delaying and obstructing the executrix in filing timely and accurate reports; and (6) in failing to comply with the court's judgment, entry and orders of June 17, 1999 and its amendment on October 19, 1999, that he pay over the proceeds of the wrongful death settlement in the total sum of $750,158.34 to the Hunter estate and to the minor's guardianship.
 {¶ 28} The probate court had sufficient evidence before it to find Goldberg in direct criminal contempt of the court for all of the reasons noted by the probate court, except attempting to suborn the appearance of the executrix at the June 8, 1999 hearing. The only evidence was a report of a call from an employee of Goldberg's office that "it would not be necessary" to attend the hearing. While impliedly the order may have come from Goldberg, it was insufficient to constitute proof beyond a reasonable doubt. Since this finding was only a very minor part of the contempt, the elimination of it will not effect the sentence.
 {¶ 29} Goldberg had notice of the terms of the probate court's December 14, 1998 distribution orders and the June 17, 1999 vacated settlement order (as amended by the October 19, 1999 orders) to immediately distribute $277,125.01 as the separate property and assets of the minor beneficiaries, Jason and Sheena Hunter, in accordance with the court ordered distributions and to pay over the proceeds of the wrongful death settlement, including disgorged attorney fees, in the total sum of $753,158.34 to the instant estate and to the minors' guardianships. The orders were made in the presence of Goldberg and counsel Dunlap at the June 8, 1999 hearing and followed up with the probate court's June 17, 1999 vacated settlement orders. Furthermore, at the June 8, 1999 hearing, counsel for Goldberg made representations and admissions that the funds were available and that the "in excess of $270,000" would be paid and/or distributed. In addition, the probate court made clear to defendant that the $277,125.01 due to the minors and all of Goldberg's disgorged attorney fees were to be turned over to attorney Kalasky immediately. In the June 17, 1999 order, the court expressly stated:
 {¶ 30} "IT IS ORDERED, ADJUDGED AND DECREED and the parties and counsel are hereby forewarned and cautioned that any failure to fully and literally comply with the aforesaid Orders of this Court shall be considered a direct contempt of Court and dealt with accordingly."
 {¶ 31} Not only was Goldberg served with this order, he initially appealed the order to this court but later voluntarily dismissed the appeal. There is no question that Goldberg had actual knowledge of the orders of the probate court giving rise to the finding of contempt.
 {¶ 32} Although Goldberg's counsel clearly indicated that he would pay the $277,125.01 due the minors to attorney Kalasky, that payment was not made. In addition, on June 28, 1999, attorney Dunlap mailed a letter to the court in which he expressed on behalf of Goldberg the intention not to comply with that part of the court's orders, which directed Goldberg to disgorge and return fees he had taken in the instant estate, but that they intended to appeal the court's orders in this respect. At no time did Goldberg or his counsel refuse to pay over the monies due the minors in the total sum of $277,125.01, but there was no compliance.
 {¶ 33} We have previously outlined what constitutes criminal contempt, Goldberg's conduct in this case supports a finding of disrespect for the administration of justice which impeded or disturbed the probate court in the performance of its functions. There was ample evidence to prove that Goldberg was guilty of criminal contempt beyond a reasonable doubt.
 {¶ 34} Goldberg also contends that the contempt, if any, is indirect. A direct contempt is one committed in the presence of the court, whereas an indirect contempt is one committed outside the court's presence. See In re Lands (1946), 146 Ohio St. 589. There is little difference between the classification of contempt as direct or indirect other than a matter in which the contempt case is proved. In this case, most of what took place occurred directly before the probate judge who found Goldberg guilty of the contempt; it was conceded, and as a matter of record, that the actions ordered by the probate judge did not take place. In other words, there is no doubt that Goldberg did not comply with orders made by the probate court and found necessary to enable the court to carry out the functions of the court. The relevant difference is that indirect contempt cannot be punished summarily and it was not punished summarily in this case. Goldberg was noticed to appear and show cause and did so, represented by counsel, and was given every opportunity to explain his alleged violations of the probate court's orders, thus complying with the requirements of R.C. 2705.03 for indirect contempt. See State v. Local Union 5760, United Steel Workers (1961),172 Ohio St. 75, 82. At the hearing, the only claimed error was that the probate court failed to recognize Goldberg's affirmative defense of inability to pay. In this respect, Goldberg claims, in this court as he did at the probate court level, that he lacked the ability to pay the amount because, pursuant to his federal criminal case, he was obligated to deposit $4.5 million into a victim's compensation account managed by Federal Judge Polster and that the National City Bank had taken judgment against Goldberg for about $4.6 million and had perfected a judgment lien, which allegedly encompassed all of Goldberg's assets. He also states that the Mahoning County Probate Court controlled $917,397 from Goldberg's alleged "attorney trust fund" at National City Bank. The probate court in its order finding Goldberg guilty of contempt dealt with this matter at substantial length, finding in essence that Goldberg offered no actual proof of his inability to pay other than pointing to the various funds described before hand. In reviewing the hearing, it is clear that Goldberg was given an opportunity to present whatever proof he chose to establish that, at the time performance was due under the court's orders, he had no ability to return the funds as ordered by the court. Inability to pay is an affirmative defense upon which Goldberg had the burden. The trial court did not err in finding that Goldberg had failed to establish that defense.
 {¶ 35} Goldberg next argues that he cannot be held in contempt for failure to disgorge his attorney fees, as regardless of his conduct he is entitled to fees which he earned. While that general proposition of law may ordinarily be true, it is not a defense to contempt of court for failure to obey the court's order to pay the attorney fees previously allowed back into the estate. Due to the attorney's neglect, unknown at the time attorney fees were originally allowed for proper handling of the case, the evidence shows that attorney Goldberg's services were defectively performed. It was within the discretion of the probate court to order the fees returned to the estate pending redistribution of the settlement amount which could (and should) result in a re-determination of the value of Goldberg's services. The disgorgement order does not mean that ultimately no attorney fees will be allowed to Goldberg.
 {¶ 36} Finally, Goldberg contends that the probate court did not have subject matter jurisdiction in the concealment action. There is no validity to this argument, since the matter at hand involves a contempt action pertaining to matters over which the probate court had full jurisdiction.
 {¶ 37} Appellant's first assignment of error is overruled.
 {¶ 38} In appellant's second assignment of error, he asserts that the probate court erred in ordering Goldberg imprisoned for failure to pay a debt.
 {¶ 39} We agree with the probate court's assessment of this defense, which reads as follows:
 {¶ 40} "Finally, Attorney Richards' alternative argument that Goldberg cannot be imprisoned for contempt is plainly erroneous. It is true that the Constitution prohibits imprisonment merely for debt. However, the Constitution does not prohibit imprisonment for contempt of a court order and neither Goldberg nor his counsel have offered any legal authority in support of their contentions to the contrary."
 {¶ 41} In Second Natl. Bank of Sandusky v. Becker (1900),62 Ohio St. 289, the Ohio Supreme Court pointed out that the ability to imprison for contempt is not dictated by the fact that money is ordered paid, but is determined by the character of the order and money in question. In In re Guardianship of Jadwisiak (1992), 64 Ohio St.3d 175, the Ohio Supreme Court applied the teaching of Second Natl. Bank ofSandusky in a manner directly applicable to this case where they held that it was not unconstitutional for the court to hold an attorney in contempt for failing to comply with court orders requiring him to return fees improperly disbursed, finding that the order in question was not for the payment of money but, rather, to return funds improperly disbursed.
 {¶ 42} In summary, we hold that the probate court had the jurisdiction and authority to order Goldberg imprisoned for failure to pay money to the guardian and for failure to turn over funds necessary for the court to perform its duty in the administration of a matter before it.
 {¶ 43} Appellant's second assignment of error is overruled.
 {¶ 44} In his third assignment of error, appellant asserts that the probate court erred by taking judicial notice of statements made in other cases.
 {¶ 45} The court has the power to take judicial notice of its own records and judicial notice of its own actions in earlier proceedings of the same case. Diversified Mortgage Investors, Inc. v. Athens Cty. Bd. ofRevision (1982), 7 Ohio App.3d 157, 159. In the instant action, a probate court took judicial notice of the entire record of the herein matter, all of which was known to appellant and his attorney. Any objection thereto was waived by failure to make a timely request to be heard as to the propriety of taking judicial notice. Evid.R. 201(E).
 {¶ 46} Appellant's third assignment of error is overruled.
 {¶ 47} In his fourth assignment of error, appellant alleges that the probate court erred by failing to allow Goldberg's basic procedural due process during the contempt hearing by failing to allow Goldberg to cross-examine witnesses during the contempt hearing or to conduct a hearing on the contempt charge. There is no substance to this assertion. Appellant received written notice of the charge against him, he appeared and was represented by counsel and was given the opportunity to be heard and present evidence in his favor. A review of the record of the contempt hearing demonstrates that Goldberg's counsel did not seek the opportunity to cross-examine witnesses and, in fact, stipulated to virtually everything upon which the court based its judgment reserving only the contentions that it is unconstitutional to incarcerate a person for failure to pay a civil debt and that he lacked the ability to make the payments which were ordered. These defenses are invalid as previously discussed.
 {¶ 48} Appellant's fourth assignment of error is overruled.
 {¶ 49} Appellant's assignments of error are overruled, and the judgment of the Mahoning County Court of Common Pleas, Probate Division, for contempt in the matter of the estate of William R. Hunter is affirmed.
Judgment affirmed.
MILLIGAN and NAHRA, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
MILLIGAN, J., retired of the Fifth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
NAHRA, J., retired of the Eighth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.