THE STATE, EX REL. SEVENTH URBAN, INC., ET AL., APPELLANTS, *v.*
McFAUL, SHERIFF, APPELLEE.

[Cite as State, ex rel. Seventh Urban, Inc., *v.* McFaul (1983),
5 Ohio St. 3d 120.]

(No. 82-704—Decided June 8, 1983.)

---

[1] "Q   How long after that did any of the judges of the court of appeals make an appearance in the room?

"A   Well, we were due to begin at 10:00 o'clock. I have been in the court of appeals twice, and both times we started at 10:00. This time they did not come in at 10:00. They came in sometime after 10:00. I would say between five and ten minutes after 10:00, because after the incident, there was quite a bit of walking around, and mingling around. I was out in the hall myself for approximately ten minutes."

*Messrs. Schulman & Schulman* and *Mr. Howard A. Schulman,* for appellants.

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. Patrick Carroll* and *Mr. Patrick J. Murphy,* for appellee.

WEBER, J. Three propositions of law have been presented in this appeal.

## I

The first issue presented is whether Milton Schulman was guilty of direct criminal contempt. Appellant Schulman argues that his actions did not obstruct the administration of justice.

R.C. 2705.01 reads:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

Where judges have no personal knowledge of the alleged act of contempt because of its commission beyond the court's actual physical presence, the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to. *State* v. *Local Union 5760, United Steelworkers* (1961), 172 Ohio St. 75, 82 [15 O.O.2d 133]. Here, such a procedure was followed.

This court held in paragraph one of the syllabus in *State* v. *Kilbane* (1980),. 61 Ohio St. 2d 201 [15 O.O.3d 221], that "[c]ourts, in their sound discretion, have the power to determine the kind and character of conduct which constitutes direct contempt of court. * * *" In order to constitute direct contempt, an act need not be in the immediate presence of the court, if it tends to obstruct justice or interfere with the actions of the court in the courtroom itself. *In re Estate of Wright* (1956), 165 Ohio St. 15, 26 [59 O.O. 37].

The conduct of Schulman in striking Willis in the court of appeals' courtroom, approximately ten minutes before the judges entered the courtroom, in the presence of the court reporters and bailiff of the court of appeals, is an open threat to the orderly procedure of the court. If such actions are not punished, an assaulted person will feel he is not being accorded equal justice under the law, and demoralization of the court's authority may follow. A per-

son ordered to appear before a court is entitled to the protection of the court when the person enters the courtroom pursuant to a court order.

Consequently, Schulman's assault of Willis obstructed the administration of justice. Striking someone who is in a courtroom on court business, the act occurring in the presence of the court's bailiff, marshal, constable or court reporter, is a direct contempt in the constructive presence of the court and may be punished as such.

The first proposition of law is without merit.

## II

Appellant Schulman additionally maintains that the evidence does not support a finding that he intended to obstruct the administration of justice by his actions, and thus he could not be found guilty of criminal contempt.

A person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 39 [10 O.O.3d 78].

The natural, reasonable and probable consequences of Schulman's voluntary act of striking Willis was the obstruction of the administration of justice.

The second proposition of law is overruled.

## III

Appellant Seventh Urban argues that the court of appeals abused its discretion when it assessed costs of the mandamus action against relator without any consideration of the merits of relator's claims or the fairness of the assessment of costs. Appellant maintains that it was entitled to the relief it sought, the action becoming moot solely through the delay of respondent and Willis.

Until a trial court renders a judgment in an action, the merits of any claim are pure conjecture. The court of appeals in this case did not determine whether a writ of mandamus should be issued. Rather, the complaint was dismissed as moot.

An abuse of discretion implies an unreasonable, arbitrary or unconscionable attitude on the part of the court. *Pembaur* v. *Leis* (1982), 1 Ohio St. 3d 89, 91; *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218, 219-220 [24 O.O.3d 322]. The court of appeals did not abuse its discretion in assessing the costs of the mandamus action against relator. Even assuming that relator had prevailed on the merits of the cause, the court in that instance is clothed with judicial discretion in the assessment of costs. *State, ex rel. Hiett,* v. *Court* (1921), 102 Ohio St. 40, paragraph one of the syllabus. In this case, the court had no opportunity to determine the merits of the action, and it therefore did not exhibit an unreasonable, arbitrary or unconscionable attitude in assessing costs of the mandamus action against relator.

Appellant's proposition is not well-taken.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN and J.P. CELEBREZZE, JJ., concur.

W. BROWN, J., concurs in judgment only.

WEBER, J., of the Second Appellate District, sitting for LOCHER, J.