OPINION
{¶ 1} This appeal is from an order entered by the Mahoning County Court of Common Pleas, Probate Division, on May 3, 2000, which resulted in a finding of contempt of court by Richard D. Goldberg from failing to comply with previous orders of the court. In that finding, Goldberg was found guilty of direct contempt of court and guilty beyond a reasonable doubt of criminal contempt of the court. The court ordered that Goldberg be sentenced to a term of imprisonment of 90 consecutive days to be served consecutively with any other order of either the court below or any other federal or state court, which has imposed a sentence upon him or may subsequently impose a sentence. The sentence was ordered to commence after completion of all other periods of actual physical incarceration. Goldberg is currently incarcerated in the Federal Correctional Institute at Morgantown, West Virginia,
 {¶ 2} This case was consolidated for hearing before this court with three other cases involving similar issues of contempt. However, since the facts in each case are somewhat different, although the law is generally the same in each instance, the cases will be considered separately in our opinions.
 {¶ 3} Appellant, Goldberg, asserts the following assignments of error:
 {¶ 4} "[1.] The Probate Court erred in finding Goldberg to be in contempt of court.
 {¶ 5} "[2.] The Probate Court erred in ordering Goldberg to be imprisoned for failure to pay a debt.
 {¶ 6} "[3.] The Probate Court erred by taking judicial notice of statements made in other cases.
 {¶ 7} "[4.] The Probate Court erred by failing to allow Goldberg basic procedural due process during the contempt hearing."
 {¶ 8} The Lanning case was considered in the Mahoning County Probate Court on August 25, 1998, at which time a motion and order approving a partial settlement in a wrongful death action involving the estate of Richard C. Lanning, deceased, was approved by the court. The partial settlement was in the amount of $2.5 million. Subsequently, the probate court amended its original distribution order of August 25, 1998, ordering Goldberg to make distribution of the wrongful death and survival settlement proceedings as follows: (1) $400,000 to Donald Lanning; (2) $400,000 to Hannah Lanning; (3) $275,000 to each of the four surviving siblings; (4) $829,999.99 to himself for attorney fees; and (5) $100,000 to the estate of Richard C. Lanning under the survival claim. In compliance with the court's orders, Goldberg made distribution of the wrongful death and survivor settlement proceeds as ordered. Meanwhile, the Lanning litigation continued against the defendants with whom there was no settlement.
 {¶ 9} On November 2, 1998, Goldberg filed a motion asking the court to release $10,311 in litigation expenses already incurred and $20,000 in litigation expenses expected to be incurred in the future as the litigation continued. These included fees and expenses for expert witnesses' depositions and similar litigation expenses. In Goldberg's motion, he accounted for the current outstanding expenses for which he sought reimbursement. As to expected expenses within the immediate future of $20,000, he stated that this amount "will be accounted for by Richard D. Goldberg to this court upon payment." On the same day, the probate court granted the motion and authorized the withdrawal of such money from the estate account subject to the stipulation that Goldberg would, as he represented, "immediately and fully account for the expenditure of the $20,000."
 {¶ 10} On July 29, 1999, the probate court removed Donald Lanning, Sr., and Hannah Lanning as co-administrators and appointed attorney Gary Zamora as successor administrator. At that time, or at no time thereafter, did Goldberg ever file an accounting with the court of the use of the $20,000 in litigation expenses expected to be incurred in the future as was ordered by the court.
 {¶ 11} On December 14, 1999, the probate court issued a complaint for the concealment of assets alleging that Goldberg failed to account for the $20,000 advanced to him and, as such, concealed those assets of the estate. On January 3, 2000, the probate court ordered Goldberg to appear and show cause why he should be held in contempt for his failure to account for the $20,000 advanced from the estate.
 {¶ 12} After a delay necessary to obtain Goldberg's presence, since he was incarcerated in Federal prison in West Virginia, on February 2, 2000, the probate court conducted a hearing on the contempt charges with Goldberg present and represented by counsel. Goldberg's counsel, Mr. Richards, observed that his original objection at the first hearing, which was continued to obtain Goldberg's presence, was mooted by the fact that Goldberg was present on February 2, 2000.
 {¶ 13} At the hearing, the former co-administrators, Donald and Hannah Lanning, testified that they had never received an accounting for Goldberg for the $20,000 which had been advanced to Goldberg. Zamora, the present fiduciary, stated that he had not received an accounting from anybody, including Goldberg, as to this $20,000 sum. The replacement attorney for the continuing litigation, Herman Moses, who the court had appointed substitute counsel, stated that he had received the legal file, the medical records, and the pleadings and the law associated with the underlying malpractice case. Other than that, he had received nothing. He stated that, to the best of his knowledge, it constituted the complete file of Goldberg. Moses said the file which he received contained nothing related to litigation expenses that had been paid by Goldberg, as far as he could tell. Moses further testified that neither Goldberg nor anyone representing him had turned over the $20,000 to him and that he had never received a dollar or any indication of what happened to the $20,000. Moses testified that he was not even aware of the advancement for future litigation expenses until the complaint was instituted. Zamora, the substitute administrator, testified that there were receipts in the file that accounted for the $10,311 for the expenses that had already been incurred and had been approved.
 {¶ 14} Charles L. Richards, Goldberg's attorney, was asked if he had any contrary evidence that would explain what happened to the $20,000 or any portion of it. He stated that he had some information that he had not been able to verify independently and that his information totaled $9,494.10, and that he did not know whether this amount was part of the $10,311 that was expended and accounted for earlier. Richards asked the court to allow it as against the $20,000 if it were an additional expense for future litigation or that the court request Zamora to tell the court which category these payments applied. Richards tendered the bills for Zamora to review and to report back to the court.
 {¶ 15} Finally, Richards stated that he would stipulate that Goldberg had not otherwise accounted for the $20,000. The court concluded the hearing, stating that he was taking the matter under advisement pending a report from Zamora.
 {¶ 16} Richards was not denied any opportunity to present witnesses or to cross-examine witnesses which appeared and, in fact, stated "I am not arguing that he [sic] [Goldberg] complied to date because he hasn't." There were no other objections except the suggestion of Richards that the court hold the contempt matter in abeyance because Moses was pursuing ongoing litigation with a request that the court not hold Goldberg in contempt until the final conclusion of this matter, or at least without giving him an opportunity to make a full accounting up to that point of time, or up to the point of time that all litigation was completed.
 {¶ 17} On March 1, 2000, Zamora filed his amended report with a recommendation. Zamora stated that the evidence obtained through the court by way of copies of canceled checks showed that Goldberg had actually expended $8,339.29 for future litigation, leaving $11,660.71 that had not been accounted for. He recommended that the court issue a ruling that Goldberg had accounted for $8,339.29 in expenses and that the court issue a finding that Goldberg had violated the court's order of November 2, 1998, and had not accounted for $11,660.71. Nothing further was received from Goldberg or his counsel.
 {¶ 18} The court's charge in contempt was filed with the clerk on January 3, 2000, and personally served on Goldberg on January 4, 2000. The nature of the contempt delineated that Goldberg had failed to comply with the court's orders of November 2, 1998, by failing to "do or perform certain acts, to wit: to account and/or receipt for $20,000 in advancements of legal expenses to be `accounted for by Richard Goldberg * * * upon payment.'" On May 3, 2000, the probate judge issued an order stating, as pertinent as follows: "Goldberg's retention of and abject failure to promptly and fully account for the $20,000 in assets of the estate constitute direct contempts of Court. These acts were directly contrary to the very explicit November 2, 1998 orders of the Court and were contrary to his role as an officer of the Court. His continuing unlawful retention of and failure to account for these assets have directly resulted in the Administrator being unable to fully inventory and account for all of the assets of the Estate. Goldberg has therefore inexcusably hindered, delayed and obstructed the administration of this Estate and the administration of justice by the Court. Each of these acts constitute separate frauds upon the court and obstructions of justice."
 {¶ 19} The court continued: "[n]otwithstanding these instances of direct contempt, the Court did not act summarily. Rather, it paused in a constitutional sense, and chose to invoke the process prescribed for indirect contempt for Goldberg's failure to comply with the Court's orders of November 2, 1998. It has done so to assure him the fullest measure of due process. Accordingly and consistent with the law of indirect contempt, the court issued its charging order thereon." The court further found that Goldberg intended to violate its orders of November 2, 1998. It was the judgment of the court that Goldberg be found guilty of direct and criminal contempt of court beyond a reasonable doubt for failing to comply with the court's orders of November 2, 1998, that he immediately and fully account for the expenditure of $20,000 in assets of the estate that further his failure to comply therewith constituted both a fraud upon the court, and that Goldberg had intended a delay and obstruction of the administration of justice by the court.
 {¶ 20} The court sentenced Goldberg to a term of 90 consecutive days of imprisonment within the Mahoning County justice system and ordered that the sentence shall be served consecutively to any other sentence imposed upon him.
 {¶ 21} Appellant's assignments of error will be considered separately in deciding this appeal.
 {¶ 22} Appellant's first assignment of error is that "the probate court erred in finding Goldberg to be in contempt of court." In conjunction with this assignment of error, appellant raises two issues: (1) the probate court did not prove Goldberg guilty of criminal contempt beyond a reasonable doubt; and (2) Goldberg's conduct did not constitute direct contempt of court.
 {¶ 23} The trial court has the discretion to determine the kind and character of conduct which constitutes direct contempt of court.State ex rel. Seventh Urban, Inc. v. McFaul (1983), 5 Ohio St.3d 120,122, quoting State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus. An appellate court will not reverse a finding of contempt unless the trial court abused its discretion. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion involves more than an error of judgment. It constitutes an attitude on the part of the court that is unreasonable, unconscionable or arbitrary. Pembauer v.Leis (1982), 1 Ohio St.3d 89.
 {¶ 24} Contempt is a disregard of or disobeyance to an order or command with judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294. It is conduct which engenders disrespect for the administration of justice or which tends to embarrass, impede, or disturb a court in the performance of its functions. Denovchek v. Bd. of Trumbull Cty. Commrs.
(1988), 36 Ohio St.3d 14. Contempt may be classified as either civil or criminal. Criminal contempt sanctions operate as punishment for the completed act of disobeyance that is designed to vindicate the authority of the court. Criminal conduct is usually characterized by an unconditional prison sentence. Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253-254. A finding of criminal contempt requires proof beyond a reasonable doubt.
 {¶ 25} In cases of criminal contempt, it must be shown that the contemptor intended to defy the court. Midland Steel Prods. Co. v.U.A.W. Local 486 (1991), 61 Ohio St.3d 121, paragraph two of the syllabus. The state of mind of an accused, including appellant's knowledge of the terms of the court order, may be proven by circumstantial evidence. Midland Steel, supra, at 128. In this case, there was direct knowledge of the terms of the court orders.
 {¶ 26} In its May 3, 2000 contempt order, the probate court found Goldberg guilty of criminal contempt for failing to immediately and fully account for the expenditure of $20,000 in assets of the estate. The probate court had sufficient evidence before it to find Goldberg in direct criminal contempt of the court for the reasons noted by the probate court.
 {¶ 27} Goldberg had notice of the terms of the probate court's November 2, 1998 order based upon his own motion for advancement of $20,000 from the estate for future litigation expenses. Furthermore, Goldberg sought the court's permission for the advancement for which he promised prompt and immediate accounting for expenditures from that $20,000 fund. No expenditure was provided to the court or anyone else. Substitute counsel was not given notice of the fund. Goldberg had full opportunity to rectify the failure to the account and did not do so. In fact, his counsel admitted, as he must, that there had been no accounting and that over half of the fund had not been spent.
 {¶ 28} The fact that the subsequent litigation was not over and substitute counsel, Moses, may have litigation expenses to be paid from some other source is of no benefit to Goldberg's defense.
 {¶ 29} We have previously outlined what constitutes criminal contempt. Goldberg's conduct in this case supports a finding of disrespect for the administration of justice which impeded or disturbed the probate court in the performance of its functions. There was ample evidence to prove that Goldberg was guilty of criminal contempt beyond a reasonable doubt.
 {¶ 30} Goldberg also contends that the contempt, if any, is indirect. A direct contempt is one committed in the presence of the court, whereas an indirect contempt is one committed outside the court's presence. See In re Lands (1946), 146 Ohio St. 589. There is little difference between the classification of contempt as direct or indirect other than a matter in which the contempt case is proved. In this case, the probate judge proceeded to treat this case procedurally as indirect contempt. It was conceded and a matter of record that the actions ordered by the probate judge did not take place. In other words, there is no doubt that Goldberg did not comply with orders made by the Probate Court, which were necessary to enable the court to carry out its functions. The relevant difference between direct and indirect contempt is that indirect contempt cannot be punished summarily. The contempt herein was not punished summarily. Goldberg was noticed to appear and show cause and did so, represented by counsel, and was given every opportunity to explain his alleged violations of the probate court's orders, thus complying with the requirements of R.C. 2705.03 for indirect contempt. See State v. Local Union 5760, United Steel Workers (1961),172 Ohio St. 75, 82. At the hearing, the only claimed error was that the probate court failed to recognize Goldberg's affirmative defense of inability to pay. In this respect, Goldberg claims, in this court as he did at the probate court level, that he lacked the ability to pay the delinquent amount because, pursuant to his federal criminal case, he was obligated to deposit $4.5 million into a victim's compensation account managed by Federal Judge Polster and that the National City Bank had taken judgment against Goldberg for about $4.6 million and had a perfected a judgment lien, which allegedly encompassed all of Goldberg's assets. He also states that the Mahoning County Probate Court controlled $917,397 from Goldberg's alleged "attorney trust fund" at National City Bank. The probate court in its order finding Goldberg guilty of contempt dealt with this matter at substantial length, finding in essence that Goldberg offered no actual proof of his inability to pay other than pointing to the various funds described above. In reviewing the hearing, it is clear that Goldberg was given an opportunity to present whatever proof he chose to establish that at the time performance was due under the court's orders he had no ability to return the funds as ordered by the court. Inability to pay is an affirmative defense upon which Goldberg had the burden. The trial court did not err in finding that Goldberg had failed to establish that defense.
 {¶ 31} Appellant's first assignment of error is overruled.
 {¶ 32} In appellant's second assignment of error, he asserts that the probate court erred in ordering Goldberg imprisoned for failure to pay a debt.
 {¶ 33} The argument that Goldberg cannot be imprisoned for contempt is erroneous. It is true that the Constitution prohibits imprisonment merely for debt. However, the Constitution does not prohibit imprisonment for contempt of a court order and neither Goldberg nor his counsel have offered any legal authority in support of their contentions to the contrary.
 {¶ 34} In Second Natl. Bank of Sandusky v. Becker (1900),62 Ohio St. 289, the Ohio Supreme Court pointed out that the ability to imprison for contempt is not dictated by the fact that money is ordered paid, but is determined by the character of the order and money in question. In In re Guardianship of Jadwisiak (1992), 64 Ohio St.3d 175, the Ohio Supreme Court applied the teaching of Second Natl. Bank ofSandusky in a manner directly applicable to this case where they held that it was not unconstitutional for the court to hold an attorney in contempt for failing to comply with court orders requiring him to return fees improperly disbursed, finding that the order in question was not for the payment of money but, rather, to return funds improperly disbursed.
 {¶ 35} In summary, we hold that the probate court had the jurisdiction and authority to order Goldberg imprisoned for failure to comply with the court's order to account in a way necessary for the court to perform its duty in the administration of a matter before it.
 {¶ 36} Appellant's second assignment of error is overruled.
 {¶ 37} In his third assignment of error, appellant asserts that the probate court erred by taking judicial notice of statements made in other cases.
 {¶ 38} The court has the power to take judicial notice of its own records and judicial notice of its own actions in earlier proceedings of the same case. Diversified Mortgage Investors, Inc. v. Athens Cty. Bd. ofRevision (1982), 7 Ohio App.3d 157, 159. In the instant action, a probate court took judicial notice of the entire record of the matter herein, all of which was known to appellant and his attorney. Any objection thereto was waived by failure to make a timely request to be heard as to the propriety of taking judicial notice. Evid.R. 201(E).
 {¶ 39} Appellant's third assignment of error is overruled.
 {¶ 40} In his fourth assignment of error, appellant alleges that the probate court erred by failing to allow Goldberg's basic procedural due process during the contempt hearing by failing to allow Goldberg to cross-examine witnesses during the contempt hearing or to conduct a hearing on the contempt charge. There is no substance to this assertion. Appellant received written notice of the charge against him, he appeared and was represented by counsel and was given the opportunity to be heard and present evidence in his favor. A review of the record of the contempt hearing demonstrates that Goldberg's counsel did not seek the opportunity to cross-examine witnesses and, in fact, stipulated to virtually everything upon which the court based its judgment. In fact, Goldberg's counsel suggested to the court that his unsubstantiated records be admitted into evidence and reviewed by Zamora, who had the records, for a subsequent report. The trial court graciously allowed that procedure, to Goldberg's benefit (as to amount spent) without objection.
 {¶ 41} Appellant's fourth assignment of error is overruled.
 {¶ 42} Appellant's assignments of error are overruled, and the judgment of the Mahoning County Court of Common Pleas, Probate Division, for contempt in the matter of the estate of Richard C. Lanning is affirmed.
Judgment affirmed.
MILLIGAN and NAHRA, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
MILLIGAN, J., retired of the Fifth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
NAHRA, J., retired of the Eighth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.