[Cite as *In re Chambers*, 2019-Ohio-3596.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: TENIKA CHAMBERS | : | APPEAL NOS. C-180333 |
| | | C-180334 |
| | : | CASE NOS. M-1800624 |
| | | M-1800625 |
| | : | |
| | : | *O P I N I O N.* |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed from are: Reversed and Cause Remanded in C-180334; Appeal Dismissed in C-180333

Date of Judgment Entry on Appeal: September 6, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}     Tenika Chambers appeals the trial court's judgments finding her in direct criminal contempt of court.  In the first order, trial court number M-180625 and appeal number C-180334, the court found Chambers in contempt and imposed a three-day sentence.  The contemptuous conduct included Chambers's belligerence towards courtroom staff, occurring after her cellphone had been taken from her for violating a courtroom rule banning cell phones.  In the second order, trial court number M-180624 and appeal number C-180333, the court found after announcing and imposing the three-day sentence in M-180625 that Chambers was once again disruptive while being escorted from the courtroom by deputies.  The court imposed a ten-day consecutive term for that conduct.  The court used summary contempt procedures in both cases, which is characterized by a lack of written notice of the charges, absence of an adversary hearing upon the issues, and no opportunity to be represented by counsel.

{¶2}     On appeal, Chambers represents that she has served both sentences, but contends her appeals are not moot.  Raising two assignments of error, she argues that the trial court erred by summarily finding her in direct contempt, instead of employing the established procedures required in indirect contempt proceedings, in those instances where the judge did not personally witness the allegedly contemptuous conduct.  Alternatively, she argues the trial court's finding of direct contempt was an abuse of discretion because the record does not demonstrate, beyond a reasonable doubt, that her conduct constituted direct contempt.

{¶3}     We conclude Chambers's appeal in the case numbered M-180624 is not moot, and that the contempt finding must be reversed because, as alleged in the

2

first assignment of error, the court failed to afford to Chambers due-process protections, as set forth in R.C. 2705.03, which were required because the court lacked personal knowledge of the alleged acts that rendered her actions contemptuous. Chambers's appeal from the contempt finding in the case numbered M-180625 is moot, because the circumstances, including Chambers's failure to seek a stay of her sentence after the appointment of counsel, demonstrate that Chambers voluntarily served her sentence and failed to preserve her right to appeal that contempt finding.

### Background Facts and Procedure

{¶4} During a criminal proceeding involving Chambers's son before a trial judge of the Hamilton County Court of Common Pleas, Chambers's cell phone was confiscated because she violated an established and well-announced courtroom rule banning cell phones. She returned to the courtroom later in the day, when the judge was attending a meeting in his chambers, and allegedly had an altercation with the courtroom bailiff that resulted in the summoning of the sheriff's deputies. Chambers reportedly left the area around the courtroom for a brief period, but returned with her sister and used her sister's phone to take photographs of the area outside the courtroom. Deputies confiscated the sister's phone, and Chambers and her sister were told to return to the courtroom the next morning to retrieve the phones.

{¶5} The trial judge subsequently learned from courtroom staff of the events that had occurred in his absence the prior afternoon, and when Chambers and her sister appeared during the morning session the following day to retrieve their phones, the judge told them he was holding a "direct contempt hearing." He then asked his courtroom bailiff and a sheriff's deputy to place on the record the facts of the allegedly contemptuous

conduct occurring the previous day after he had retired to his chambers. Neither the bailiff nor the deputy was sworn in.

{¶6}     When the bailiff and deputy concluded their recitation of the previous day's events, the judge determined that he would not find Chambers's sister in contempt, but found Chambers in "direct contempt" because of her belligerence towards the bailiff in the courtroom and her "screaming and yelling out in the hallway." The court then asked Chambers if she wanted to say anything. In reply, she requested an attorney and told the court the allegations were false. The court told her she was not entitled to an attorney "at that point," and then found Chambers in contempt for the additional reason that she had failed to turn over her phone the previous day despite three notifications of the courtroom ban. The judge acknowledged that he had not found her in contempt the previous day when he had personally observed her violate the cell phone rule, but instead had "cut her a break." He then sentenced Chambers to three days in jail for all of her contemptuous behavior the previous day, including the behavior he had not personally observed.

{¶7}     After the three-day sentence was imposed, deputies took custody of Chambers. When Chambers and the deputies were in the hallway outside of the courtroom, the judge, according to the judgment entry, "witnessed and heard screaming and yelling" that "caused a disruption" in the courtroom and the hallway outside. The judge had the deputies bring Chambers back into the courtroom, and admonished her for the screaming and yelling. Chambers replied that she was telling family members to call "Channel 12 News, to call everybody." The judge held her in contempt for a second time and imposed a ten-day sentence, to be served consecutively to the three-day sentence previously imposed in M-180625.

{¶8}     Chambers was then taken to the Hamilton County Justice Center to serve her aggregate 13-day sentence.  On the sixth day of incarceration, a public defender filed a motion to mitigate the remainder of her sentence.  The judge held a hearing on the motion the next day and denied it.  Eleven days later, Chambers filed these appeals.  In two assignments of error, she challenges the merits of the contempt findings, not the sentences imposed by the court.

### Mootness

{¶9}     Ordinarily, an appellate court lacks jurisdiction to consider the merits of a moot appeal.  *See Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 18, citing *State v. Berndt*, 29 Ohio St.3d 3, 4, 504 N.E.2d 712 (1987).  The general rule on the mootness of criminal appeals provides that "[w]here a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction."  *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), syllabus.  This general rule does not apply to felony convictions, which result in collateral disabilities as a matter of law.  *State v. Golston*, 71 Ohio St.3d 224, 643 N.E.2d 109 (1994), syllabus.

{¶10}     Contempt proceedings are not entirely civil nor criminal, but "sui generis in the law."  *City of Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201, 299 N.E.2d 686 (1973).  Here, however, the character of the contempt was clearly criminal; the court applied the beyond-a-reasonable-doubt standard when determining guilt and imposed the sanction of jail time to punish Chambers.  *See id.*

{¶11}   When a contemnor appeals a finding of criminal contempt, courts typically apply the general rule governing mootness of criminal appeals.  *See, e.g., Columbus v. Cicero*, 10th Dist. Franklin No. 12AP-407, 2013-Ohio-3010, ¶ 12-13; *State v. Kelly*, 2016-Ohio-8582, 77 N.E.3d 388, ¶ 42-45 (4th Dist.).  We apply the rule here, noting that although the character of the proceedings was criminal, the finding of contempt was not categorized as a felony conviction.

{¶12}   Chambers argues her appeals are not moot under the general rule, even though she served her sentences, because she did not "voluntarily" serve her sentences.

{¶13}   Under Ohio law, the completion of a sentence is not considered to be "voluntary" for mootness purposes

> if the circumstances surrounding [the completion of the sentence] demonstrate that the appellant neither acquiesced in the judgment nor abandoned the right to appellate review, that the appellant has a substantial stake in the judgment of conviction, and that there is subject matter for the appellate court to decide.

*Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, at paragraph one of the syllabus.

{¶14}   In *Lewis*, the Supreme Court reviewed whether a criminal appeal was rendered moot when a misdemeanant contested the charges at trial and, after the conviction, unsuccessfully sought a stay of execution to prevent the appeal from becoming moot, but failed to seek a stay in the appellate court and satisfied his sentence while his appeal was pending but not before he filed his notice of appeal. *Id*. at ¶ 24.  The appellate court in *Lewis* had determined that the appeal was not

rendered moot, but certified that a conflict existed between its decision and two other appellate districts that had found, under similar facts, the failure to seek a stay in the appellate court to be fatal. *Id.* at ¶ 1. The Supreme Court found the circumstances demonstrated that Lewis neither acquiesced in the judgment nor abandoned his right to appeal, even though he did not seek an additional stay in the appellate court, and concluded that Lewis had not voluntarily completed the sentence pending the appeal. *Id.* at ¶ 24-24; *see State v. Jones*, 2018-Ohio-565, 95 N.E.3d 440, ¶ 5 (1st Dist.) (appeal from conviction for failing to confine a dangerous dog was not rendered moot by defendant's completion of sentence of probation, where defendant moved unsuccessfully for stay of sentence in trial court after his trial).

{¶15} Chambers argues the record demonstrates she did not voluntarily serve her sentences, even though she did not seek a stay in any court, because she sought to contest the contempt charges, as evidenced by her request for an attorney, and then once counsel was obtained, she filed a motion to mitigate her sentences and later appealed. We agree in part.

{¶16} Here, the circumstances show that Chambers did not intend to acquiesce in the judgment nor abandoned the right to review the contempt finding in M-180625. The record reflects that when given the chance to address the court upon the finding of contempt, Chambers denied the allegations and requested an attorney. Her request was refused. She then protested as she was escorted out of the courtroom by deputies to serve the three-day sentence imposed by the court. These facts suggest only that Chambers served her sentence under duress, even though she did not seek a stay or file an appeal before the completion of her sentence, because

there is nothing in the record to indicate that Chambers was afforded counsel before her three-day sentence expired. Under these circumstances, we conclude that Chambers did not voluntarily serve her sentence in M-180625.

{¶17} Further, to the extent that Chambers's assignments of error relate to the finding of contempt, but not the punishment for the contempt, this court may provide redress of her claims, even though she completed her sentence and failed to move to stay execution of that sentence. We conclude that the circumstances surrounding the completion of the three-day sentence, which occurred before she was afforded requested counsel, demonstrate that Chambers neither acquiesced in the judgment nor abandoned the right to appellate review. Moreover, Chambers has a substantial stake in the judgment of conviction, there is subject matter for the appellate court to decide and, therefore, her appeal of the contempt finding in M-180625 did not become moot. *See Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, at paragraph one of the syllabus.

{¶18} Conversely, the circumstances show that Chambers acquiesced in the judgment and abandoned the right to review the contempt finding in M-180624. The transcript indicates that when the judge had Chambers brought back into the courtroom after her disruptive behavior on the way to the justice center, and then again found her in contempt and sentenced her to an additional ten days, Chambers did not contest that finding of contemptuous behavior. Further, she was afforded counsel while serving the sentence and counsel did not seek a stay of execution. Counsel did argue for mitigation of the sentence before completion, claiming remorse and hardship, but a motion to reduce the sentence, citing hardship and remorse, is not the equivalent of a motion to stay a sentence. *See City of Lyndhurst*

8

*v. Masseria*, 8th Dist. Cuyahoga Nos. 71655 and 71656, 1997 WL 661880, *2 (Oct. 23, 1997).

{¶19}   Moreover, Chambers never indicated she wished to preserve her appellate rights and, still represented by counsel, did not file her notice of appeal from the finding of contempt in M-180625 until after she had completed her sentence, even though the trial court had denied her motion to mitigate.

{¶20}   Chambers argues the facts of this case are identical to the facts in *State v. Stegall*, 1st Dist. Hamilton Nos. C-110767, C-120112 and C-120113, 2010-Ohio-3792.  In that case we noted, when addressing the merits of the contemnor's appeal, that she had been successful in obtaining mitigation of her sentence.  Although the record reflected that Stegall had satisfied her sentence, we did not address the issue of mootness in that case and, therefore, Chambers's reliance on *Stegall*, is unfounded.

{¶21}   As set forth in *Lewis*, the test to determine whether a sentence has been "voluntarily" served for purposes of mootness involves a fact-specific inquiry.  Because Chambers did not move to stay the sentence so she could appeal when given the opportunity to do so with the assistance of counsel, her request to mitigate her sentence evinced acceptance of her guilt, and she was delayed in appealing from the judgment, the facts of M-180624 are sufficiently distinguishable from those in M-180625 and *Lewis*.  *See Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, at ¶ 3 (defendant preserved his claim for appeal where he contested guilt, sought a stay of his sentence before he paid his fine, and filed his notice of appeal before expiration of his sentence).

{¶22}  Accordingly, we conclude that Chambers voluntarily served her sentence in M-180624.  Further, we are not persuaded that any exception to the mootness rule applies that requires us to address the merits of the contempt finding in M-180624, in addition to the finding in M-180625.  *See State ex rel. Cincinnati Enquirer v. Ohio Dept. of Public Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258 (recognizing "capable of repetition, yet evading review" exception, arising in "exceptional" circumstances); *Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28, 31, 505 N.E.2d 966 (1987), paragraph one of the syllabus (recognizing exception where the facts involve a "debatable constitutional question to resolve, or where the matter appealed is one of great public or general interest.").  Therefore, we dismiss the appeal of the judgment entered in M-180624, and limit our analysis to Chambers's challenge to the finding of contempt in M-180625.

### Criminal Contempt of Court in M-180625

{¶23}  This court recently summarized the offense of contempt of court as follows:

> Contempt of court is "conduct which brings the administration of justice into disrespect" and "which tends to * * * obstruct a court in the performance of its functions."  *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988).  The power to punish contumacious conduct—to ensure the effective administration of justice, to secure the dignity of the court, and to affirm the supremacy of the law—is inherent in a trial court, as well as derived from statute.  *See Denovchek* at 15.

10

*State v. Lowe*, 1st Dist. Hamilton Nos. C-170494, C-170495, C-170498 and C-170505, 2018-Ohio-3916, ¶ 32.

{¶24} Although contempt proceedings can be civil or criminal in nature, here the proceedings were undisputedly criminal, as Chambers was sentenced to confinement as punishment for her actions. When the accused is punished for criminal contempt, the accused is entitled to due process similar to that afforded a defendant in a criminal action. *See Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 251-252, 416 N.E.2d 610 (1980).

{¶25} Criminal contempt of court can be either "direct" or "indirect," the difference based generally on whether the conduct occurs in the presence of the court or out of the presence of the court. *See, e.g.*, R.C. 2705.01 (direct contempt occurs "in the presence of or so near the court or judge as to obstruct the administration of justice."); R.C. 2705.02 (generally setting forth examples of indirect contempt); *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946) ("An indirect contempt is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice.").

{¶26} In certain cases, direct contempt may be found and punished summarily. *See* R.C. 2705.01; *Lowe,* 1st Dist. Hamilton Nos. C-170494, C-170495, C-170498 and C-170505, 2018-Ohio-3916, at ¶ 35. Due process warrants that two circumstances must exist before a court may address a contemptuous act in that manner. The dual essential elements allowing summary contempt are:

(1) A contumacious act committed in open court in the judge's presence and immediate view that results in the judge's personal knowledge and makes further evidence unnecessary for a summary

finding of contempt ("judge's personal knowledge" element); and, (2) the contumacious act constitutes an imminent threat to the administration of justice that may result in demoralization of the court's authority unless the court imposes a summary contempt sanction ("imminent threat" element).

Chinnock and Painter, *The Law of Contempt of Court in Ohio*, 34 U.Tol.L.Rev. 309, 321 (2003).

{¶27} In every case involving indirect contempt, the alleged contemnor is entitled to formal notice and a hearing before the adjudication and punishment. This due-process guarantee is memorialized in R.C. 2705.03, which provides that "a charge in writing shall be filed with the clerk of the court, and entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel."

{¶28} Although direct contempt typically involves misconduct that takes place in the actual courtroom and in the actual presence of the trial judge, courts at times have found the concept of direct contempt to include misconduct occurring in the "constructive presence" of the court. *See State ex rel. Seventh Urban, Inc. v. McFaul*, 5 Ohio St.3d 120, 122, 449 N.E.2d 445 (1983); *In re Neff*, 20 Ohio App.2d 213, 254 N.E.2d 25 (5th Dist.1969).

{¶29} The mode of proceeding in such a case must be the same as in a case involving indirect contempt, because it is the judge's personal knowledge that allows for the use of summary procedures when acting on the contempt. *See In re Oliver*, 333 U.S. 257, 274-275, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Chinnock and Painter, 34 U.Tol.L.Rev. at 323-325.

{¶30}     In *McFaul*, the Supreme Court upheld a finding of "direct contempt" based on an attorney's assault of the opposing party, in the courtroom on court business, where the assault occurred in the presence of the courtroom personnel, including a bailiff and court reporter, but beyond the judge's physical presence. The lower court had not proceeded summarily, however, and the Supreme Court recognized the due-process ensuring procedures were required, explaining that

> where judges have no personal knowledge of the alleged act of contempt because of its commission beyond the court's physical presence, the procedure outlined in R.C. 2705.03 [for indirect contempt], requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to.

*McFaul* at 122.

{¶31}     While the *McFaul* court explained that the requirements of R.C. 2705.03 are triggered in an action for "direct contempt" when the alleged contemptuous acts occurred only in the constructive presence of the court, other courts explain it differently. *See Stegall*, 1st Dist. Hamilton Nos. C-110767, C-120112 and C-120113, 2012-Ohio-3792, at ¶ 42. In *Stegall*, we stated that where the judge has to rely on information from another, including a courtroom bailiff, to make the finding of contempt, the conduct is "classified as indirect contempt," because the court's reliance on information provided by court personnel requires the trial court to afford the alleged contemnor the constitutional safeguards afforded a criminal defendant. *Id.*

{¶32} Whether action is called "direct contempt" in the "constructive presence of the court," or given the "classifi[cation] [of] indirect contempt," where a judge has no personal knowledge of the alleged acts of contempt or only some, and must rely on information provided by courtroom staff or officers of the court to establish contempt, "the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to." *McFaul* at 122. *See Stegall* at ¶ 42.

{¶33} In its entry finding Chambers in contempt, the trial court referenced Chambers's failure, on the previous day, when court was in session, to turn over her cell phone, despite three announcements, and her "hostil[ity]" and "belligeren[ce]" towards court staff while demanding the return of her phone, upon her return to the courtroom, after court had ended and the judge had retired to chambers.

{¶34} The record reflects that the trial judge personally observed Chambers commit the offending act with respect to her own phone, but the court did not declare the act contemptuous at the time when it occurred. If that had been done, the contempt would have been "direct," and having been committed in the actual presence of the court and causing the summoning of deputies and a delay in the proceedings, a summary proceeding would have been justified, although pronouncement of the punishment may have been delayed to a more appropriate time. *See Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), cited in *Banker v. Banker*, 1st Dist. Hamilton No. C-920774, 1993 WL 547154 (Dec. 1, 1993). As the trial judge explained, the ban on cellphones is designed to protect the

14

security of witnesses, including victims and undercover police officers, who could be filmed and placed in danger.[1]

{¶35} But Chambers was not threatened with or charged with contempt of court at the time she refused to turn over her cell phone. The court stated, in fact, that it "cut her a break" and declined to contemporaneously find her in contempt. As such, the record demonstrates the judge had a change of heart influenced by subsequent conduct that he learned of from his courtroom bailiff and a deputy. In *McFaul*, the Supreme Court made clear that a summary procedure is not appropriate for misbehavior occurring only in the constructive presence of the court. If the court does not have personal knowledge of the contemptuous acts, the procedures set forth in R.C. 2705.03 must be "strictly adhered to." Here, the record reflects that the trial court had to rely on information provided by the bailiff and deputy to make the finding of contempt in M-180625, but did not follow the procedure outlined in R.C. 2705.03. Thus, we hold the court's failure to follow the procedure outlined in R.C. 2705.03, including holding an evidentiary hearing at which Chambers may provide a defense with counsel, amounts to reversible error.

## Conclusion

{¶36} The appeal numbered C-180333 involving the judgment in M-180624 is dismissed as moot. The appeal numbered C-180334 involving the finding of contempt in M-180625 is not moot, the first assignment of error raised is sustained, and the judgment in M-180625 is reversed. Chambers's second assignment of error is now moot and will be disregarded pursuant to App.R. 12(A)(1)(c). The case

---

[1] This rationale is also reflected in Hamilton County's Courthouse Security Policy, which prohibits, with a few exceptions, the operation of cellular phones in any courtroom, and provides that a violator is subject to a variety of consequences, including confiscation of the cell phone and sanctions for contempt. Loc. R. 33(D)(6) of the Court of Common Pleas of Hamilton County, General Division.

numbered M-180625 is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.