[Cite as *In re Contempt of Christman*, 2022-Ohio-1937.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE CONTEMPT OF LEIF CHRISTMAN | : | |
| | : | No. 110748 |
| [Appeal by Attorney Leif Christman in matter styled: State of Ohio v. Keanu Lanzy] | : | |
| | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART; AND REMANDED
**RELEASED AND JOURNALIZED:** June 9, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-659388-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, *for appellee*.

Russell S. Bensing, *for appellant*.

KATHLEEN ANN KEOUGH, J.:

## I. Background

{¶ 1} Appellant Leif Christman was counsel for defendant Keanu Lanzy in this case. On July 19, 2021, the trial court held a hearing on the state's motion for

bond revocation.  At the beginning of the hearing, the court engaged in the following colloquy with Christman:

> THE COURT:  Are you vaccinated?  Are you vaccinated?[1]
>
> MR. CHRISTMAN:  No, your Honor.
>
> THE COURT:  Then why is your mask not on your face?
>
> MR. CHRISTMAN:  Well, I was trying to talk.
>
> THE COURT:  Is that some kind of loophole in the mask rule; take the mask off when you're speaking?
>
> MR. CHRISTMAN:  Well, I wanted you to be able to hear me better.
>
> THE COURT:  I can hear you fine.  And I don't respect you — appreciate your disrespect of the code [sic].

(Tr. 6.)

{¶ 2} The state then argued its position regarding why the defendant's bond should be revoked, and Christman argued against the bond revocation.  (Tr. 6-18.) Following argument, the trial court denied the state's motion.  The judge and Christman then engaged in the following colloquy:

> THE COURT:  I do want to address Mr. Christman's mask wearing.  Mr. Christman, you were here last week and — in the bailiff area, and my bailiff indicated that you were not wearing your mask then.  Is that correct?
>
> MR. CHRISTMAN:  Yes, your Honor.
>
> THE COURT:  That is correct?
>
> MR. CHRISTMAN:  It is correct, your Honor.
>
> THE COURT:  Okay.

---

[1] Referring to whether Christman had received the COVID-19 vaccination.

MR. CHRISTMAN: I apologize.

THE COURT: I'm finding you in contempt for your failure to wear a mask today and your failure to wear a mask last week. There are people on the floor who are immune-compromised who cannot make antibodies. There is an Administrative Order requiring all people entering the building to wear a mask. Court employees who have provided proof of vaccination do not have to wear a mask. We're in the middle of a public health crisis that hasn't been experienced in this country in over a century, and I find you to be in contempt, direct contempt. You can purge this contempt by providing this court with proof of vaccine within 45 days or pay [a] $1,000 fine. Good luck.

(Tr. 19-20.)

{¶ 3} After the hearing, the trial court issued a judgment entry finding Christman "in direct contempt of court for violating the mask guidelines and policies of the court of common pleas." The court ruled that Christman could purge the finding of contempt by paying a $1,000 fine or providing proof of the COVID-19 vaccination within 45 days of the order. This appeal followed.

## II. Law and Analysis

{¶ 4} In his first assignment of error, Christman contends that the trial court erred in holding him in direct contempt. He concedes that the court correctly described the COVID-19 pandemic as "the worst public health crisis in this country in a century" and further, that there is a court order mandating the wearing of masks that cover one's nose and mouth while in the Justice Center. He contends that the court erred in finding him in contempt of court, however, because (1) his failure to wear a mask while addressing the court during the bond revocation hearing did not sufficiently impede the administration of justice so as to warrant a summary citation for direct contempt, and (2) although he admittedly did not wear a mask in the

presence of the judge's bailiff outside the judge's chambers the week before the bond revocation hearing, this act could not serve as the basis for a finding of direct contempt because it occurred outside the presence of the judge. In his second assignment of error, Christman contends that the trial court erred in finding him in contempt without following the procedures set forth in R.C. 2705.03. We consider the assigned errors together because they are related.

{¶ 5} "Contempt of court may be generally defined as disobedience of a court order or conduct that brings the administration of justice into disrespect and impedes a court's ability to perform its functions." *State v. T.F.,* 9th Dist. Lorain No. 17CA011175, 2019-Ohio-1039, ¶ 7. "The power to punish contumacious conduct — to ensure the effective administration of justice, to secure the dignity of the court, and to affirm the supremacy of the law — is inherent in a trial court, as well as derived from statute." *State v. Lowe*, 1st Dist. Hamilton Nos. C-170494, C-170495, C-170498, and C-170505, 2018-Ohio-3916, ¶ 32, citing *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988).

{¶ 6} The determination of contempt is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *Cleveland v. Heben*, 74 Ohio App.3d 568, 573, 599 N.E.2d 766 (8th Dist.1991); *State v. Kilbane*, 61 Ohio St.2d 201, 400 N.E.2d 386 (1980). An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 7} Contempt of court can be either "direct" or "indirect," the difference based generally on whether the conduct occurs in the presence of the court or outside its presence. *See, e.g.*, R.C. 2705.01 (Direct contempt occurs "in the presence of or so near the court or judge as to obstruct the administration of justice"); R.C. 2705.02 (setting forth examples of indirect contempt); *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946) ("An indirect contempt is one committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice.").

{¶ 8} Although direct contempt typically involves misconduct that takes place in the actual courtroom and in the actual presence of the trial judge, courts have at times found the concept of direct contempt to include misconduct occurring in the "constructive presence" of the court. *See State ex rel. Seventh Urban, Inc. v. McFaul*, 5 Ohio St.3d 120, 449 N.E.2d 445 (1983) (finding that an attorney's physical assault on the opposing party, where both were in the courtroom on court business, which occurred in the presence of court personnel before the judges entered the courtroom, constituted direct contempt in the constructive presence of the court). *Id.* at 122-123; *see also T.F.,* 9th Dist. Lorain No. 17CA011175, 2019-Ohio-1039 at ¶ 10 (juror's conduct of bringing a newspaper article about the defendant to court and discussing the article with the other jurors was direct contempt because although it did not occur in the actual presence of the judge, it occurred in the jury room "near the presence of the court" and disrupted the administration of justice because it resulted in a mistrial).

{¶ 9} Nevertheless, as this court has stated:

> Regardless of the classification of the contempt, where a judge has no personal knowledge of the alleged act of contempt and must rely on information provided by court personnel to establish contempt, "'the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to.'" *In re Chambers*, 2019-Ohio-3596, 142 N.E.3d 1243, ¶ 32 (1st Dist. Hamilton), citing *McFaul* at 122; *see also State v. T.F.*, 9th Dist. Lorain No. 17CA011175, 2019-Ohio-1039, ¶ 15 ("Where direct criminal contempt occurs not in the actual presence of the trial court judge but only in the constructive presence of the court, the alleged contemnor must be afforded due process * * *.")

*Parma v. Novak (In re Huth)*, 8th Dist. Cuyahoga No. 108501, 2020-Ohio-3177, ¶ 11.

{¶ 10} The trial judge found Christman in direct contempt for (1) not wearing a mask in the courtroom during the bond revocation hearing, and (2) not wearing a mask while in the bailiff's presence outside the judge's chambers a week prior to the hearing. Because Christman's failure to wear a mask in the bailiff's presence outside the judge's chambers did not occur in the judge's presence and the judge therefore had no personal knowledge of the incident, the trial court was required to utilize the procedure set forth in R.C. 2705.03 if Christman were to be found in contempt of court for this violation of the court's administrative order.[2] Because the trial court did not afford Christman the due process protections of R.C. 2705.03 before summarily finding him in contempt for actions that occurred outside the judge's

---

[2] R.C. 2705.03 requires a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel.

presence, the trial court abused its discretion in finding him in contempt for not wearing a mask in the bailiff's presence.

{¶ 11} The trial court did not abuse its discretion, however, in finding Christman in contempt for not wearing his mask during the bond revocation hearing. R.C. 2705.01 empowers a court to summarily punish an offender. It states, "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

{¶ 12} Due process requires that two circumstances exist before a court may find and summarily punish direct contempt: (1) "[a] contumacious act committed in open court in the judge's presence and immediate view that results in the judge's personal knowledge and makes further evidence unnecessary for a summary finding of contempt," and (2) "the contumacious act constitutes an imminent threat to the administration of justice that may result in demoralization of the court's authority unless the court imposes a summary contempt sanction." *In re Chambers,* 1st Dist. Hamilton Nos. C-180333 and C-180334, 2019-Ohio-3596, ¶ 26, citing Chinnock and Painter, *The Law of Contempt of Court in Ohio*, 34 U.Tol.L.Rev. 309, 321 (2003).

{¶ 13} The trial judge personally observed Christman not wearing his mask during the bond revocation hearing in contravention of the court's administrative order. And despite Christman's argument otherwise, his failure to wear a mask during the bond revocation hearing did indeed obstruct the court's administration of justice. The court's administrative order was designed to protect the health and

safety of all participants in court proceedings — whether the judge, the parties, counsel, other court personnel, or jurors — during what Christman acknowledges is "the worst public health crisis in this country in a century." (Appellant's Brief, p. 7.) Putting courtroom participants at risk of contracting the highly contagious airborne COVID-19 disease by not wearing a mask as ordered is, as the state contends, the very "definition" of obstructing the administration of justice. Interference with the administration of justice is not limited solely to occasions where an individual's actions disrupt or effectively halt the court's proceedings, as Christman seems to argue. Although the bond revocation hearing proceeded despite Christman's failure to wear his mask, his conduct put the health of all the courtroom participants at risk, thereby presenting an "imminent threat" to the court's administration of justice, as well as to the court's authority. Furthermore, although some judges give a warning before finding someone in contempt, as Christman contends, there is no requirement that the court do so.

{¶ 14} Christman's conduct in not wearing his mask during the bond revocation hearing was in direct violation of the court's administrative order requiring him to do so. It occurred in the judge's presence and interfered with the court's administration of justice. Accordingly, the trial court did not abuse its discretion in summarily finding Christman in direct contempt of court for that action.

{¶ 15} Although discretionary, the punishment for contempt should be "reasonably commensurate with the gravity of the offense." *Kilbane*, 61 Ohio St.2d

201, 400 N.E.2d 386 at paragraph one of the syllabus. Because the $1,000 fine was based on two instances of contempt but we concluded that the court properly found Christman in contempt for only one instance of not wearing his mask, the matter is remanded to the trial court for consideration of the appropriate amount of fine to be imposed for the single act.

{¶ 16} The first assignment of error is overruled; the second assignment of error is sustained in part and overruled in part.

{¶ 17} Judgment affirmed in part; vacated in part; and remanded.

It is ordered that the parties share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

FRANK DANIEL CELEBREZZE, III, J., CONCURS;
SEAN C. GALLAGHER, A.J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, A.J., DISSENTING:

{¶ 18} I respectfully dissent from the majority opinion and would reverse the trial court's decision finding Leif Christman in direct contempt of court for violating

the Cuyahoga County Court of Common Pleas's administrative order that imposed a mask mandate. I believe it was an abuse of discretion to render any finding of direct contempt upon the record presented.

{¶ 19} There is no question that the trial judge acted as a conscientious jurist in enforcing the administrative order. Without undermining the judge's legitimate concern for the safety and health of those working and appearing in the Justice Center during the midst of the COVID-19 pandemic, I am unable to find that Christman's conduct warranted a finding of direct contempt. I also believe the contempt finding should be reversed because it was premised, at least in part, on Christman's prior mask-wearing conduct that occurred outside the presence of the court. Also, I find the punishment imposed was unreasonable.

{¶ 20} The record reflects that at the beginning of the bond revocation hearing, the judge questioned why Christman's client did not appear on time for the proceeding when Christman had already checked in, informed the bailiff his client was parking his car, and indicated they were ready. Christman had his mask pulled down to his chin when speaking to the court. After asking Christman to sit down, the judge asked Christman why his mask was not on his face, and Christman responded that he wanted the court to hear him better.[3] While the better practice may have been to ask whether this was permissible in the judge's courtroom, the

---

[3] Though there is no direct evidence in the record regarding possible relaxed mask usage under the administrative order, it is no surprise that appellant's counsel noted his observations of this practice being permitted in some courtrooms, so long as safe-distancing measures were in place.

judge likewise never informed Christman that the administrative order would be enforced within the judge's courtroom.[4] Initially, the judge admonished Christman for failing to wear a mask over his mouth and nose while speaking before the court, and it seems Christman promptly complied as the proceeding continued uninterrupted.

{¶ 21} It was not until the conclusion of the bond-revocation proceeding, in a short exchange of words, that the trial judge found Christman to be in direct contempt of court. The judge stated that he wished to address Christman's mask wearing and began by stating the bailiff had informed him that Christman was not wearing his mask while in the bailiff area the previous week. Christman apologized; however, the judge was inclined to summarily find him in direct contempt for "your failure to wear a mask today and your failure to wear a mask last week." But for the earlier incident that occurred outside the courtroom, it is certainly plausible that the judge would have given Christman no more than a warning and not have found Christman in contempt.

{¶ 22} Case law reflects a warning is commonly given before contemptuous conduct is found to occur.[5] As this court has previously recognized, "judges typically give a warning before finding someone in contempt." *Cleveland v. Bright*, 2020-

---

[4] Christman acknowledges there was an administrative order that mandated the wearing of masks in the Justice Center. The administrative order was issued by the common pleas court's administrative judge; it was not a judicial order issued by the trial judge.

[5] Whether a warning has been provided is certainly a factor that may be considered in determining whether counsel's behavior rises to the level of direct contempt.

Ohio-5180, 162 N.E.3d 153, ¶ 55 (8th Dist.), citing *In re Contempt of Huth*, 8th Dist. Cuyahoga No. 108501, 2020-Ohio-3177, ¶ 3 (trial court warned attorney she would be held in contempt if she continued to interrupt); *In re Contempt of English*, 8th Dist. Cuyahoga No. 90417, 2008-Ohio-3671, ¶ 6 (trial court warned attorney before holding him in contempt); *In re Contempt of Veneziano*, 8th Dist. Cuyahoga No. 78634, 2001 Ohio App. LEXIS 5197, 3-4 (Nov. 21, 2001) (juvenile court warned attorney she would be held in contempt if she continued to interrupt and instructed the attorney six times to stop raising her voice); *State v. Lowe*, 1st Dist. Hamilton Nos. C-170494, C-170495, C-170498, and C-170505, 2018-Ohio-3916, ¶ 35 (trial court gave contemnor multiple warnings before finding him in contempt); *see also State v. Wilson*, 30 Ohio St.2d 312, 313-314, 285 N.E.2d 38 (1972) (attorney disregarded trial court's repeated order); *State v. Mick*, 6th Dist. Erie No. E-16-074, 2017-Ohio-8922, ¶ 7, 16 (attorney repeatedly disobeyed direct orders from the trial court); *In re Contempt of Kafantaris*, 7th Dist. Columbiana No. 07-CO-28, 2009-Ohio-4814, ¶ 2 (trial court warned defense counsel that failure to heed the court's warnings would result in contempt).

{¶ 23} Additionally, the trial judge imposed a punitive sanction by ordering Christman could purge the contempt by paying a $1,000 fine or by providing "proof of vaccine within 45 days." *See State v. Kilbane*, 61 Ohio St.2d 201, 207, 400 N.E.2d 386 (1980) (allowing for a "conditional criminal contempt sanction"). I believe that the $1,000 fine was excessive and that requiring "proof of vaccine" to purge the

contempt was unreasonable. In my view, the trial court's order effectively required Christman to obtain a vaccine to purge the contempt.

{¶ 24} Christman is not an individual who stormed into a courtroom defiantly deriding the mask mandate. He did not even berate the policies or restrictions regarding COVID in a political manifesto about government overreach or injustice. Christman was just a lawyer trying to make his best argument on behalf of a client who was under threat to have his bond revoked. He pulled his mask down because he wanted the court to clearly hear his argument. The record reflects that Christman was respectful of the court's authority, he apologized to the court, and the court proceeded with the due and orderly administration of justice. Yet, the trial judge rendered a finding of direct contempt. The judge referenced the public health crisis and immunocompromised persons, essentially equating Christman's transgression of the rule as an all-out attack on community safety.

{¶ 25} Upon my review, I believe that the trial court abused its discretion in finding Christman in direct contempt and that the punishment imposed was unreasonable. I would reverse the decision of the trial court.

{¶ 26} For these reasons, I respectfully dissent.