[Cite as *Campbell v. 1 Spring, L.L.C.*, 2019-Ohio-623.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Robert W. Campbell, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-94 |
| v. | : | (C.P.C. No. 15CV-9033) |
| 1 Spring, LLC et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on February 21, 2019

**On brief:** *Hrabcak & Company, L.P.A., Michael Hrabcak,* and *Benjamin B. Nelson,* for appellee. **Argued:** *Benjamin B. Nelson.*

**On brief:** *Law Office of W. Evan Price, II, LLC,* and *W. Evan Price, II,* for appellants. **Argued:** *W. Evan Price, II.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendants-appellants, 1 Spring, LLC ("1 Spring"), James R. Horner, and Samuel Horner (collectively, "appellants") appeal from an order of the Franklin County Court of Common Pleas granting judgment in favor of plaintiff-appellee, Robert W. Campbell, on his claims for breach of contract and unjust enrichment. Because we conclude the trial court applied the wrong standard in determining whether the agreement between the parties was ambiguous, we reverse and remand.

I. Facts and Procedural History

{¶ 2} James R. Horner and Samuel Horner are members of 1 Spring, which owns the building located at the southwest corner of North High Street and West Spring Street in Columbus, Ohio. On April 20, 2012, 1 Spring entered into a lease with the Lamar

Companies ("Lamar") providing for an outdoor advertising structure to be placed on the building ("sign lease"). The sign lease provided that Lamar would pay 1 Spring $80,000.04 per year in monthly installments for a term of ten years. Lamar also held an option to extend the sign lease for an additional ten years after the initial term expired.

{¶ 3} Prior to entering the sign lease, 1 Spring had obtained approval from the Columbus Downtown Commission to erect a digital sign on the building. Shortly before entering the sign lease, the Horners became aware that due to the building's location on a state highway it would be necessary to comply with state regulations regarding outdoor advertising. James contacted the Ohio Department of Transportation ("ODOT") and was advised that a sign would not be permitted on the 1 Spring building under the existing rules due to its proximity to other signs in the surrounding area, unless 1 Spring acquired all the existing advertising in the area. The ODOT employee indicated the agency would not grant a variance to allow a sign on the 1 Spring building, but also indicated the Director of ODOT had expressed interest in amending the existing rules to exclude urban business districts from the sign spacing requirements.

{¶ 4} A business associate of James recommended he contact Campbell, who was a former chief of staff at ODOT, regarding assistance in obtaining approval for the sign. The Horners and Campbell met on April 23, 2012 to discuss the possibility of Campbell assisting in obtaining approval for the sign and compensation for such assistance. Following the meeting, the parties agreed to memorialize their agreement in writing to establish that Campbell was authorized to represent 1 Spring. The agreement was set forth in the form of a letter to Campbell signed by James as the managing partner of 1 Spring ("the agreement"), providing the following terms:

> Samuel and James Horner hereby agree to pay you 10% of the gross receipts ($80K/year) from a lease that has been executed in regards to the above referenced property.
>
> Your compensation shall be $8,000/year during the initial term of ten (10) years. The lease commences at a point in time when the sign has been erected.
>
> For this compensation, we are "in your hands" to facilitate the proper "permitting issues" needed for the sign with regards to the State of Ohio.

> If this is agreeable to you, please sign below and return to me at my email address.

(Joint Ex. No. IV.)  A few days later, Campbell added a handwritten amendment to the agreement, providing as follows:

> In addition to the above terms and conditions, Samuel and James Horner agree to pay 10% of the gross receipts of the annual negotiated amount with Lamar Companies for the following term of 10 yrs at the end of the original 10 yr agreement. This contract is binding with 1 Spring LLC and heirs and assigns hereto.

(Joint Ex. No. IV.)  The Horners initialed this amendment, indicating their approval.

{¶ 5}  Campbell met with several officials from ODOT to discuss approval for a sign on the 1 Spring building.  These meetings included discussions regarding amending state regulations to permit approval of the sign.  Samuel testified Campbell advised him in July 2012 that no waiver would be issued approving the sign.  In August 2012, Samuel discussed the issue with Andrew Douglas, who agreed to assist in obtaining a change to the relevant state rules.  Campbell, Douglas, and the Horners met to discuss the status of the rule change process and efforts to obtain a permit for the sign.  The Joint Committee on Agency Rule Review ultimately approved ODOT's proposed rule change, and a permit was granted for the sign at 1 Spring.  A permit was granted for a sign on the 1 Spring building and Lamar began paying rent to 1 Spring pursuant to the sign lease in September 2013.

{¶ 6}  Campbell filed a complaint in the common pleas court in October 2015 asserting claims for breach of contract, promissory estoppel, and unjust enrichment. Campbell asserted that he performed pursuant to the terms of the agreement and appellants refused to pay him.  A trial was conducted in June 2017. On October 17, 2017, the trial court entered a decision holding that Campbell proved by a preponderance of the evidence that the parties entered into a binding, written contract, Campbell performed under the contract, and appellants breached that contract by failing to compensate Campbell.  The court further held that it would be unjust to allow appellants to reap the benefits of Campbell's work without compensating him.  The court entered judgment in favor of Campbell on his claims for breach of contract and unjust enrichment, and dismissed his claim of promissory estoppel as moot.  The court referred the matter to a magistrate for a hearing on damages. On January 9, 2018, the court issued a final judgment

ordering appellants to pay Campbell $38,102.67 in damages for the period September 2013 through January 10, 2018, and 10 percent of future rent revenue received from the sign lease for the period of the contract.

## II. Assignments of error

{¶ 7}   Appellants appeal and assign the following three assignments of error for our review:

> [I.] The trial court erred when it ruled that the parties' contract was not ambiguous and purportedly refused to consider extrinsic evidence pursuant to the parol evidence rule yet proceeded to rule that Appellee Robert W. Campbell "proved" the meaning of critical Contract terms by a preponderance of the evidence and then entered judgment for Appellee on breach of contract based on its erroneous construction of the Contract.
>
> [II.] The trial court erred when it refused to consider evidence of the Parties' course of performance in construing the Contract and entered judgment in favor of Appellee Robert W. Campbell on his breach of contract claim.
>
> [III.] The trial court erred when it entered judgment in favor of Appellee Robert W. Campbell on his unjust enrichment claim after holding that the dispute was governed by a valid, express contract.

## III. Analysis

{¶ 8}   Appellants argue in their first assignment of error the trial court erred by concluding the agreement was unambiguous and refusing to consider extrinsic evidence of the parties' intent.

{¶ 9}   "[J]udicial examination of [a] contract begins with the fundamental objective of ascertaining and giving effect to the intent of the parties at the time they executed the agreement." *CosmetiCredit, LLC v. World Fin. Network Natl. Bank*, 10th Dist. No. 14AP-32, 2014-Ohio-5301, ¶ 13.   If a contract is not ambiguous, it must be enforced as written. *Id.* " 'Contractual language is "ambiguous" only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.' "   *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, ¶ 18 (10th Dist.), quoting *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir.1991).   Thus, when parties to a contract dispute the meaning of contractual language

the court must first consider the four corners of the contract. *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis,* 10th Dist. No. 09AP-06, 2009-Ohio-5671, ¶ 21. If the terms of the contract are clear and precise, it is not ambiguous and the court may not refer to evidence outside of the contract to determine the meaning of those terms. *Id.* However, "[w]hen the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement give the plain language special meaning, extrinsic evidence can be used to ascertain the intent of the parties." *Id.* at ¶ 22. Determination of whether a contract is ambiguous is a question of law, which we review de novo. *CosmetiCredit* at ¶ 13.

{¶ 10} Appellants argue the portion of the agreement setting forth Campbell's duties was ambiguous, specifically the phrases "in your hands" and "permitting issues." Appellants claim those phrases were put in quotation marks in the agreement because the parties had discussed them prior to the agreement being drawn up. At trial, James testified the term "permitting issues" referred to obtaining a waiver or variance from ODOT permitting placement of the digital sign. He stated it did not refer to amending or changing state law, and that Campbell told the Horners he would not be able to facilitate a change to the law. James further testified he would not have asked Campbell to attempt to modify state laws or regulations because Campbell was not an attorney, and he viewed amending laws or regulations as a legal matter. Similarly, Samuel testified he understood the term "permitting issues" to mean Campbell would acquire a permit for the sign by obtaining a waiver, variance, or non-conforming permit from ODOT. Samuel testified Campbell indicated during their discussion that he would not be involved in the project if it required amending or changing state law. By contrast, Campbell testified he understood the agreement to be that he would do whatever he could to get the permit, and that it was necessary to have the law or regulations amended in order to obtain the permit, because waivers of the existing standards did not exist. Campbell testified he did not know why the term "permitting issues" was in quotes in the agreement.

{¶ 11} In its conclusions of law, the trial court noted the standard for determining whether a contract is ambiguous and stated that extrinsic evidence of the parties' intention would only be considered if the contract was ambiguous. The court then concluded Campbell proved by a preponderance of the evidence that the agreement required him to obtain permits for the digital sign by acquiring a waiver or some other means, and Campbell

had broad discretion under the contract to determine how to achieve this objective. The court held Campbell "proved by a preponderance of the evidence that the contract between the parties is not ambiguous and the extrinsic evidence offered, pursuant to the parol evidence rule, has no legal effect and will not be considered." (Oct. 17, 2017 Decision at 14.)

{¶ 12} As explained above, the parties offer competing interpretations of Campbell's obligations and duties under the agreement and the phrase "permitting issues." Based on our review of the trial court's findings of fact and conclusions of law, it appears the court relied on extrinsic evidence in concluding the agreement was unambiguous. By referring to Campbells' argument that he had broad discretion to obtain a permit through a waiver or some other method and concluding that Campbell established by a preponderance of the evidence that the agreement was unambiguous, the trial court appears to have relied on evidence outside the four corners of the agreement in evaluating whether it was ambiguous. Under these circumstances, we find it appropriate to remand to the trial court to apply the correct legal standard and determine whether the agreement is ambiguous without resort to extrinsic evidence.

{¶ 13} Accordingly, we sustain appellants' first assignment of error.

{¶ 14} In their second assignment of error, appellants assert the trial court erred by refusing to consider evidence of the parties' course of performance in construing the agreement. Because we conclude the trial court applied the wrong standard in determining whether the agreement was ambiguous and remand for application of the correct standard, appellants' second assignment of error is rendered moot.

{¶ 15} Accordingly, we render moot appellants' second assignment of error.

{¶ 16} In their third assignment of error, appellants assert the trial court erred by entering judgment in favor of Campbell on his claim for unjust enrichment after holding the parties entered into a valid express contract. Generally, "[a]n equitable action for unjust enrichment will not lie in the absence of fraud or bad faith when the subject of the claim is governed by an express contract." *CosmetiCredit* at ¶ 42. In this case, our conclusion on appellant's first assignment of error requires the trial court to re-evaluate its conclusions regarding the agreement; therefore, appellants' third assignment of error is rendered moot.

{¶ 17} Accordingly, we render moot appellants' third assignment of error.

**IV. Conclusion**

{¶ 18}  For the foregoing reasons, appellants' first assignment of error is sustained and their second and third assignments of error are rendered moot. We reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed and cause remanded.*

BROWN and HORTON, JJ., concur.

———————