[Cite as *Campbell v. 1 Spring, L.L.C.*, 2024-Ohio-308.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Robert W. Campbell, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-375 |
| v. | : | (C.P.C. No. 15CV-9033) |
| 1 Spring, LLC et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on January 30, 2024

**On brief:** *Hrabcak & Company, L.P.A., Michael Hrabcak,* and *Benjamin B. Nelson*, for appellee. **Argued:** *Benjamin B. Nelson.*

**On brief:** *Law Office of W. Evan Price, II, LLC,* and *W. Evan Price, II*, for appellants. **Argued:** *W. Evan Price, II.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendants-appellants, 1 Spring, LLC ("1 Spring"), James R. Horner, and Samuel Horner (collectively "appellants") appeal from an order of the Franklin County Court of Common Pleas granting a motion for a charging order filed by plaintiff-appellee, Robert W. Campbell, and ordering that the membership interest of James R. Horner and Samuel Horner in 1 Spring be charged with payment of the unpaid balance of the judgment issued in favor of Campbell on May 28, 2019. Because we conclude the trial court did not abuse its discretion by granting the motion for a charging order, we affirm.

**I. Facts and Procedural History**

{¶ 2} The underlying dispute between the parties to this appeal arises from a consulting agreement entered in April 2012, and has resulted in two prior appeals.

*Campbell v. 1 Spring, L.L.C.*, 10th Dist. No. 18AP-94, 2019-Ohio-623 ("*Campbell I*"), and *Campbell v. 1 Spring, L.L.C.*, 10th Dist. No. 19AP-368, 2020-Ohio-3190 ("*Campbell II*"). In *Campbell I*, we summarized the facts related to the consulting agreement:

> James R. Horner and Samuel Horner are members of 1 Spring, which owns the building located at the southwest corner of North High Street and West Spring Street in Columbus, Ohio. On April 20, 2012, 1 Spring entered into a lease with the Lamar Companies ("Lamar") providing for an outdoor advertising structure to be placed on the building ("sign lease"). The sign lease provided that Lamar would pay 1 Spring $80,000.04 per year in monthly installments for a term of ten years. Lamar also held an option to extend the sign lease for an additional ten years after the initial term expired.

> Prior to entering the sign lease, 1 Spring had obtained approval from the Columbus Downtown Commission to erect a digital sign on the building. Shortly before entering the sign lease, the Horners became aware that due to the building's location on a state highway it would be necessary to comply with state regulations regarding outdoor advertising. James contacted the Ohio Department of Transportation ("ODOT") and was advised that a sign would not be permitted on the 1 Spring building under the existing rules due to its proximity to other signs in the surrounding area, unless 1 Spring acquired all the existing advertising in the area. The ODOT employee indicated the agency would not grant a variance to allow a sign on the 1 Spring building, but also indicated the Director of ODOT had expressed interest in amending the existing rules to exclude urban business districts from the sign spacing requirements.

> A business associate of James recommended he contact Campbell, who was a former chief of staff at ODOT, regarding assistance in obtaining approval for the sign. The Horners and Campbell met on April 23, 2012 to discuss the possibility of Campbell assisting in obtaining approval for the sign and compensation for such assistance. Following the meeting, the parties agreed to memorialize their agreement in writing to establish that Campbell was authorized to represent 1 Spring. The agreement was set forth in the form of a letter to Campbell signed by James as the managing partner of 1 Spring ("the [consulting] agreement"), providing the following terms:

>> Samuel and James Horner hereby agree to pay you 10% of the gross receipts ($80K/year) from a lease

> that has been executed in regards to the above referenced property.
>
> Your compensation shall be $8,000/year during the initial term of ten (10) years. The lease commences at a point in time when the sign has been erected.
>
> For this compensation, we are "in your hands" to facilitate the proper "permitting issues" needed for the sign with regards to the State of Ohio.
>
> If this is agreeable to you, please sign below and return to me at my email address.

(Joint Ex. No. IV.)  A few days later, Campbell added a handwritten amendment to the [consulting] agreement, providing as follows:

> In addition to the above terms and conditions, Samuel and James Horner agree to pay 10% of the gross receipts of the annual negotiated amount with Lamar Companies for the following term of 10 yrs at the end of the original 10 yr agreement. This contract is binding with 1 Spring LLC and heirs and assigns hereto.

(Joint Ex. No. IV.)  The Horners initialed this amendment, indicating their approval.

Campbell met with several officials from ODOT to discuss approval for a sign on the 1 Spring building.  These meetings included discussions regarding amending state regulations to permit approval of the sign.  Samuel testified Campbell advised him in July 2012 that no waiver would be issued approving the sign.  In August 2012, Samuel discussed the issue with Andrew Douglas, who agreed to assist in obtaining a change to the relevant state rules.  Campbell, Douglas, and the Horners met to discuss the status of the rule change process and efforts to obtain a permit for the sign.  The Joint Committee on Agency

Rule Review ultimately approved ODOT's proposed rule change, and a permit was granted for the sign at 1 Spring. A permit was granted for a sign on the 1 Spring building and Lamar began paying rent to 1 Spring pursuant to the sign lease in September 2013.

*Campbell I* at ¶ 2-5.

**{¶ 3}** The trial court issued an initial judgment in favor of Campbell in January 2018. *Id.* at ¶ 6. Appellants appealed and we concluded the trial court erred by relying on extrinsic evidence in determining whether the consulting agreement was ambiguous. *Id.* at ¶ 12. We reversed and remanded for further proceedings. *Id.* On remand, the trial court issued judgment in favor of Campbell on May 28, 2019 ("the May 28th judgment"), holding appellants liable to Campbell for $51,764.14, plus interest, for the period from September 2013 through June 2019, and ten percent of future rent revenues received from the sign lease beginning in July 2019. *Campbell II* at ¶ 3. Appellants again appealed and we concluded the trial court did not abuse its discretion in determining the meaning of ambiguous terms in the consulting agreement. *Id.* at ¶ 30. We also held the trial court's judgment was not against the manifest weight of the evidence. *Id.* at ¶ 31. We affirmed the May 28th judgment in favor of Campbell. *Id.* at ¶ 32.

**{¶ 4}** On October 13, 2021, Lamar and 1 Spring entered into a new 20-year lease ("new lease") that terminated the original sign lease ("original lease") effective October 31, 2021. Appellants advised Campbell of the termination on October 14, 2021, and asserted their obligation to pay Campbell under the consulting agreement ended when the original lease was terminated.

**{¶ 5}** In January 2022, Campbell moved for a charging order pursuant to R.C. 1705.19(A) against James R. Horner and Samuel Horner's membership interest in 1 Spring.[1] Campbell alleged appellants had not made any payments under the May 28th judgment since October 2021. Appellants opposed Campbell's motion, asserting their obligation to Campbell under the consulting agreement was dependent on the receipt of revenue under the original lease and ended when the original lease was terminated.

---

[1] R.C. 1705.19(A) has been repealed by the General Assembly and the provisions governing a charging order against a judgment debtor's membership interest in a limited liability company are now located in R.C. 1706.342. 2019 Am.Sub.S.B. No. 276.

{¶ 6} The trial court granted Campbell's motion for a charging order, concluding the new lease was a "successor lease" between the same parties to the original lease, and that appellants remained obligated to compensate Campbell until April 30, 2032. The court ordered the membership interests of James R. Horner and Samuel Horner in 1 Spring be charged with payment of the unpaid balance of the May 28th judgment in favor of Campbell.

## II.  Assignment of Error

{¶ 7} Appellants appeal and assign the following sole assignment of error for our review:

> The trial court erred as a matter of law when it entered a charging order holding that the Parties' Consulting Contract applied to a new lease agreement entered by Appellants after the Tenant terminated the original ten-year lease and required materially different terms in a new lease.

## III. Analysis

## A. Function of a charging order

{¶ 8} A charging order is "a remedy available to judgment creditors by virtue of a previously entered judgment in the creditor's favor." *Berns Custom Homes*, *Inc. v. Johnson*, 8th Dist. No. 110118, 2021-Ohio-3033, ¶ 22. "A charging order is a judgment creditor's sole and exclusive remedy to satisfy a judgment against the membership interest of a limited liability company member." *Knollman-Wade Holdings, L.L.C. v. Platinum Ridge Properties, L.L.C.*, 10th Dist. No. 14AP-595, 2015-Ohio-1619, ¶ 8, citing former R.C. 1705.19(B). *See* R.C. 1706.342(F) ("This section provides the sole and exclusive remedy by which a judgment creditor of a member or assignee may satisfy a judgment out of the judgment debtor's membership interest, and the judgment creditor shall have no right to foreclose, under this chapter or any other law, upon the charging order, the charging order lien, or the judgment debtor's membership interest."). Under a charging order, a judgment creditor has the rights of an assignee of a membership interest in a limited liability company, i.e., the right to receive distributions of cash and other property and allocations of profits, losses, income, gains, deductions, credits, or similar items to which the assignor would have been entitled. *Knollman-Wade* at ¶ 9, citing former R.C. 1705.18(A) and 1705.19. *See* R.C. 1706.342(A) ("To the extent so charged and after the limited liability

company has been served with the charging order, the judgment creditor has only the right to receive any distribution or distributions to which the judgment debtor would otherwise be entitled in respect of the membership interest.").

**B. Standard of review**

{¶ 9}  Appellants argue the trial court erred by misinterpreting the terms of the consulting agreement and concluding that the new lease constituted a "successor lease" to the original lease.  They assert the case involves an issue of contract interpretation, which is subject to de novo review.  Campbell argues the trial court's conclusion was based on a factual finding that the same parties were involved in the original lease and the new lease, and should be affirmed if supported by competent, credible evidence.

{¶ 10} The statute governing a charging order provides that on application by a judgment creditor, the court may charge the membership interest of a judgment debtor. *See* R.C. 1705.19(A), repealed in 2019 Am.Sub.S.B. No. 276; R.C. 1706.342(A).  The use of "may" in the statute indicates the trial court has discretion as to whether to issue a charging order. *See State v. Niesen-Pennycuff*, 132 Ohio St.3d 416, 2012-Ohio-2730, ¶ 13 ("[T]he use of the word 'may' in R.C. 2951.041(E) allows trial courts the discretion to apply—or not apply—the statutes from R.C. Chapter 2953."); *Gerlach v. Gerlach*, 10th Dist. No. 03AP-22, 2004-Ohio-1607, ¶ 20 ("The statute, by the use of the word 'may,' gives the trial court discretion to consider the allocation of the expenses when adjusting a child support order.").  Accordingly, we review the trial court's grant of the charging order for abuse of discretion.  An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable; however, no court has the authority to commit an error of law when exercising its discretion. *State v. Spirnak*, 10th Dist. No. 19AP-261, 2020-Ohio-6838, ¶ 16. Notwithstanding the trial court's discretionary authority to issue a charging order, to the extent the trial court's decision required interpreting contract provisions, we review the trial court's interpretation of those provisions de novo. *See Mulvey v. GuideOne Mut. Ins. Co.*, 10th Dist. No. 17AP-47, 2017-Ohio-7902, ¶ 15 ("Questions regarding the existence of a contract and its meaning are questions of law subject to de novo review on appeal.").  Under the de novo standard, we grant no deference to the trial court's interpretation and conduct an independent review to determine the meaning of the relevant contract provisions. *Id*. at ¶ 6.

**C. Whether the trial court erred by issuing the charging order**

{¶ 11} Campbell sought the charging order to recover on the previously issued May 28th judgment. Therefore, in determining whether Campbell was entitled to a charging order, we must consider the terms of the May 28th judgment.

{¶ 12} On remand from *Campbell I*, the trial court issued a decision containing findings of fact and conclusions of law, concluding in part that the consulting agreement was a binding contract and that Campbell proved by a preponderance of the evidence that appellants had breached the contract. The trial court then referred the case to a magistrate for a damages hearing, to be held May 21, 2019. The day prior to the scheduled damages hearing, the parties advised the magistrate they would forego the hearing and submit an agreed proposed final judgment entry setting forth the damages in the case. The record indicates the parties' agreed proposed final judgment entry became the May 28th judgment.

{¶ 13} An agreed judgment entry is a contract reduced to judgment by a court and is subject to the same rules of construction as a contract. *Padgett v. Padgett*, 10th Dist. No. 08AP-269, 2008-Ohio-6815, ¶ 28. *See State ex rel. Yost v. Summer Rays, Inc.*, 10th Dist. No. 18AP-929, 2019-Ohio-3907, ¶ 15 ("As the Agreed Order constitutes a binding contract, such a construction runs afoul of the fundamental principle of contract interpretation that in determining the parties' intent, a court must read the contract as a whole and give effect, if possible, to every part of the contract."). Accordingly, we apply the principles of contract interpretation when reviewing the May 28th judgment.

{¶ 14} With respect to appellants' future obligations, the May 28 judgment provided that appellants "shall continue to be liable to Mr. Campbell for ten percent (10%) of future rent revenues received from the lessee, its successors and/or assigns pursuant to the terms of the contract entered into between the parties." (May 28, 2019 Final Jgmt. Entry at 1-2.) Because the May 28th judgment incorporated by reference the terms of the consulting agreement (the "contract entered into between the parties"), we must consider both the May 28th judgment and the consulting agreement in determining whether the trial court abused its discretion by granting the charging order.

{¶ 15} The consulting agreement provided that Campbell would receive "10% of the gross receipts ($80K/year) from a lease that has been executed in regards to [1 Spring's]

property." (Apr. 23, 2012 Letter.) It further provided that Campbell's commission of $8,000 per year would continue "during the initial term of ten (10) years" and that the lease would commence when the sign had been constructed. (Apr. 23, 2012 Letter.) The handwritten amendment provided Campbell would be paid "10% of the gross receipts of the annual negotiated amount with Lamar Companies for the following term of 10 [years] at the end of the original 10 [year] agreement." The consulting agreement was formatted as a letter, and the lease number of the original lease was included in the subject line.

{¶ 16} Appellants argue Campbell's compensation under the consulting agreement was directly connected to the original lease and the potential ten-year renewal contemplated in the original lease. They claim that Campbell's right to compensation during the second ten-year term was "dependent upon Lamar opting to renew the [original lease] 'on the same terms and conditions' apart from the rental rate for a second ten-year term." (Appellants' Brief at 11-12.) Appellants claim that because the new lease contains different terms and conditions than those in the original lease, Campbell has no right to any portion of the rent received under the new lease, and that any obligation to pay Campbell ceased when the original lease was terminated under the terms of the new lease.

{¶ 17} " 'Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' " *Atelier Dist. v. Parking Co. of Am., Inc.*, 10th Dist. No. 07AP-87, 2007-Ohio-7138, ¶ 16, quoting *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. *See Mulvey* at ¶ 15 ("When construing the terms of a written contract, the court's objective is to give effect to the intent of the parties, which is presumed to rest in the language the parties chose to employ."). As explained in *Campbell II*, the consulting agreement "gave Campbell broad authority to pursue approval of an advertising sign through whatever means he found appropriate." *Campbell II* at ¶ 30. In exchange, if the sign was approved and constructed, appellants agreed to compensate Campbell for a 20-year term, at a rate of 10 percent of the gross amount of rent received from Lamar for the advertising sign. With respect to the second 10-year term, there was nothing in the consulting agreement linking Campbell's compensation to a renewal of the original lease on the exact same terms, only that appellants would continue to pay Campbell 10 percent of the rent received from Lamar during that term. The "same terms and conditions" language that appellants cite was part

of the original lease, which provided that Lamar could renew the lease for another 10-year term on the same terms and conditions. However, an addendum to the original lease also provided that 1 Spring reserved the right to renegotiate the rental rate at the end of the first 10-year term. Thus, the "same terms and conditions" provision only related to Lamar's right to renew the original lease and was not part of the consulting agreement.

{¶ 18} Appellants argue the trial court erred by concluding the new lease was a "successor lease" to the original lease. Appellants argue the new lease was an entirely new agreement containing new terms and conditions. The recitals contained in the new lease explained 1 Spring and Lamar's reasons for entering into it: (1) the original lease did not give Lamar a right to renew or extend beyond August 31, 2023; (2) 1 Spring owned the permits allowing advertising devices on the building; (3) the advertising devices located on the building were economically obsolete and made the location undesirable to Lamar unless upgraded at a cost of more than $300,000; (4) Lamar "prefer[red] upgrading the [advertising] [d]evices to exercising its right to terminate [the original lease]" but was unwilling to do so unless 1 Spring transferred ownership of the advertising permits and granted a new lease term of at least 10 years; and (5) 1 Spring was willing to transfer the advertising permits to Lamar in exchange for increased annual rent and a 20-year term. Although the parties terminated the original lease as part of the new lease, these recitals establish that the new lease was effectively a renegotiation and extension of the core of their original bargain—i.e., 1 Spring allowed Lamar to construct and operate advertising signs on the building in exchange for guaranteed monthly rent payments and a guaranteed term. Under these circumstances, we cannot conclude the trial court erred by finding the new lease to be a successor lease to the original lease.

{¶ 19} The evidence presented at trial established that appellants wished to obtain permits for an advertising sign on the 1 Spring building. Due to the urgency of the matter, in exchange for Campbell's assistance in obtaining those permits, appellants agreed to pay Campbell 10 percent of the gross rent they received from Lamar for a 20-year period. Campbell agreed to assist appellants in obtaining the permits. Those were the fundamental terms memorialized in the consulting agreement. The trial court found that Campbell performed his end of the bargain, and we affirmed that finding. *Campbell II* at ¶ 31. Appellants ultimately agreed to a judgment entry providing they continued to be liable to

Campbell for 10 percent of the rent revenue received from Lamar pursuant to the consulting agreement. Despite the fact that Campbell performed under the consulting agreement and appellants agreed they were liable to him under that agreement, appellants have not compensated Campbell pursuant to the terms of the consulting agreement since October 2021. Therefore, the trial court did not abuse its discretion by granting Campbell's motion for a charging order.

{¶ 20} Accordingly, we overrule appellants' sole assignment of error.

## IV. Conclusion

{¶ 21} For the foregoing reasons, we overrule appellants' sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and BEATTY BLUNT, J. concur.

_____