[Cite as *State v. Smith*, 2025-Ohio-581.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 23AP-576 |
| | | (C.P.C. No. 22CR-1597) |
| Bettie J. Smith, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee, | : | |
| [Kavon S. Brown, | : | |
| Appellant]. | : | |

D E C I S I O N

Rendered on February 20, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, *Seth L. Gilbert*, and *Michael A. Walsh*, for appellee State of Ohio. **Argued:** *Michael A. Walsh*.

**On brief:** *Mitchell A. Williams*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, Kavon S. Brown, appeals from an order of the Franklin County Court of Common Pleas holding him in contempt of court and imposing a summary sanction of seven days of incarceration. For the following reasons, we reverse and remand with instructions to vacate that order.

I. Facts and Procedural History

{¶ 2} The underlying proceeding in this case involved a criminal prosecution of defendant-appellee, Bettie J. Smith. During pre-trial proceedings, the trial court ordered a

competency evaluation of Smith. *State v. Smith*, 2024-Ohio-5613, ¶ 7 (10th Dist.). Pursuant to the evaluation, in April 2023, the trial court found Smith not competent to stand trial and ordered her to be held until she was returned to competency. *Id.* After a few months of treatment, the court received another evaluation report concluding that Smith was competent to stand trial. Based on that report, the trial court found Smith competent to stand trial and ordered her to be returned to the Franklin County jail. *Id.*

{¶ 3} Smith's case was scheduled for trial on September 18, 2023. Before a jury was seated, the prosecutor advised the trial court that a plea offer had been extended that would resolve the case, along with two other pending cases against Smith. Smith's trial counsel indicated Smith had refused the plea offer but had additional questions about it. The trial court discussed the plea offer with Smith and her trial counsel. Smith expressed concern that entering guilty pleas would affect her educational and employment opportunities, or her retirement benefits. The trial court granted a recess to allow Smith to discuss her remaining questions with her trial counsel.

{¶ 4} Brown was the defendant in another criminal case, Franklin C.P. case No. 22CR-4640, also scheduled for September 18, 2023. From the record, it appears that the trial court took up Brown's case during the recess in Smith's case. Brown, who had been charged with one count of domestic violence and one count of assault, pleaded guilty to the stipulated lesser-included offense of misdemeanor assault. The trial court sentenced Brown to 137 days in jail and terminated the case, having found that Brown had 137 days of jail-time credit.

{¶ 5} When the hearing resumed in Smith's case, the prosecutor informed the trial court that Smith had requested a modification to the plea offer and that plaintiff-appellee, State of Ohio, had agreed to the change. Smith then informed the court that she would not accept the plea offer. The trial court questioned Smith about her decision, suggesting Brown made a comment outside the courtroom that influenced Smith:

> THE COURT: You're shaking your head.
>
> [SMITH]: And I no longer want it.
>
> THE COURT: Okay. What happened in the back with Mr. Brown?

[SMITH]: Okay. We talked about that. We can just keep it at the regular. I want to take it to trial and I want them to keep it at aggravated robbery.

THE COURT: What did Mr. Brown say to you?

[SMITH]: Mr. Brown?

THE COURT: The guy -- the gentleman in the back?

[SMITH]: Yeah. I'm taking it to trial.

THE COURT: You changed your mind based on --

[SMITH]: Yep.

THE COURT: -- what one guy said?

[SMITH]: Yep.

THE COURT: Okay.

THE COURT: Don't release Mr. Brown.

[SMITH]: [Makes sound].

THE COURT: All right. No. Ms. Smith, we're going to come back at 1:30. I want you to take a long hard look, because if Mr. Brown is so smart --

[SMITH]: No.

THE COURT: -- why would he be in jail.

[SMITH]: No. I want to go with -- I want to go with it. I want to go with it because I don't want to do any more time. I'm innocent.

THE COURT: We're going to recess until 1:30.

(Sept. 18, 2023 Tr. at 13-15.)[1]

---

[1] A jury was selected for Smith's case on the afternoon of September 18, 2023, and the trial commenced the following day. At the end of trial, the jury found Smith guilty of the two charges against her and the trial court imposed an aggregate indefinite sentence of six to seven and one-half years of imprisonment. *Smith*, 2024-Ohio-5613, at ¶ 9. This court affirmed the trial court's judgment on appeal. *Id*. at ¶ 22.

**{¶ 6}** The following day, September 19, 2023, the trial court convened a hearing with Brown and his counsel in attendance. At the beginning of the hearing, the judge explained his understanding of the prior day's events:

> The Court was starting trial in the Bettie Smith case when the Court was informed that there was a -- after some lengthy negotiations, Ms. Smith was looking to resolve her case. We resolved Mr. Brown's first, and then the Court was informed by counsel for Ms. Smith that Mr. Brown told Ms. Smith something to the effect of "take it to trial baby. Don't take a deal." And when we brought Ms. Smith out for the change of plea, she indicated to the Court she did not want to change her plea. She wanted to proceed with trial.
>
> When the Court inquired, she indicated it was based solely on what Mr. Brown had indicated to her.

(Sept. 19, 2023 Tr. at 2-3.)

**{¶ 7}** The judge then asked Smith's trial counsel, Isabella Dixon, to explain what she observed between Brown and Smith in the holding cell area. Dixon stated Brown was waiting by the elevator after being escorted out of the courtroom when he said, "take it to trial -- either baby girl or baby." (Sept. 19, 2023 Tr. at 3.) Dixon claimed Smith later told her "she took that as an act from God that she should go to trial." (Sept. 19, 2023 Tr. at 3.) The judge asserted he was "not mad" that Smith elected to go to trial but noted he "still ha[d] some mental health concerns" about Smith, notwithstanding the fact that she had been found competent to stand trial. (Sept. 19, 2023 Tr. at 4.) Brown's counsel asserted Brown also had mental health issues that previously led to a competency evaluation and claimed Brown had not meant any disrespect to the court by his comment.

**{¶ 8}** The judge then questioned Brown directly about his alleged comment:

> THE COURT: Did you tell [Smith] to reject her plea offer and go to trial?
>
> [BROWN]: No, sir.
>
> THE COURT: You didn't tell her to go to trial?
>
> [BROWN]: I said -- I wasn't even talking to her. I said I would've took that to court. I was talking to the deputy.
>
> [BROWN'S COUNSEL]: What did you tell her?

[BROWN]: As I was going to the elevator, I said I would've take that to court. While we was in the elevator, it was like, You just told her --

[BROWN'S COUNSEL]: Did you say, "hey baby?"

[BROWN]: No, I did not say hey baby. And she said it back there yesterday. I mean, she said it back there today too and clarified I did not say baby. I used "I" statements. I said I would have took that to trial.

THE COURT: Well, you know.

[BROWN]: I wasn't aware of this -- like, I wasn't aware of I couldn't voice my thoughts and stuff. I should have kept it to myself. And I'm sorry to the courtroom, to the jury, to the judicial system. It is a lesson learned.

(Sept. 19, 2023 Tr. at 8-9.) The judge expressed concern that Smith would face significantly longer imprisonment if convicted after trial than she would have under the proposed plea agreement. He also suggested Brown's conduct may have constituted unauthorized practice of law. The judge then continued questioning Brown:

THE COURT: You didn't know she had three cases, did you?

[BROWN]: No I was talking to myself.

THE COURT: You didn't know she was facing 20 years in prison if she were convicted at trial, did you?

[BROWN]: No.

THE COURT: Okay. Then why are you telling her what to do?

[BROWN]: I wasn't talking to her.

THE COURT: Ms. Dixon said you directed your comments at her. Ms. Dixon is a practicing attorney in good standing who I've known for, you know, almost two decades. You think I'm going [to] believe you over her?

[BROWN]: (Indicating.)

(Sept. 19, 2023 Tr. at 11-12.) At the end of the hearing, the trial court entered an order finding Brown in direct criminal contempt of court and imposing a summary sanction of seven days in jail with one day of jail-time credit.

{¶ 9} On September 20, 2023, the trial court issued an order staying execution of the contempt sentence pending Brown's appeal of the contempt order.

## II. Assignments of Error

{¶ 10} Brown appeals and assigns the following four assignments of error for our review:

> [I.] The lower court erred when it adjudicated Appellant Mr. Kavon Brown guilty of summary direct criminal contempt for actions attributed to Mr. Brown that occurred outside the presence of the court and without the court's personal knowledge of Mr. Brown's conduct.
>
> [II.] The lower court erred, either over the objection of the defense or pursuant to plain error principles, when it adjudicated Appellant guilty of contempt for conduct that occurred outside the court's presence and without its personal knowledge by its failure to recognize and enforce Appellant's rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution; his rights under Article I, Sections 1, 7, 10, and 16 of the Ohio Constitution; and his rights under Crim.R. 3, Crim.R. 32(A)(1), Crim.R. 52(B), Evid.R. 103(D), R.C. 2317.30, R.C. 2705.01, R.C. 2705.02, R.C. 2705.03, R.C. 2705.05, R.C. 2901.05(A), and R.C. 2938.11(F).
>
> [III.] The trial court's decision summarily finding Appellant guilty of direct criminal contempt was not supported by the sufficiency of the evidence and ran against the manifest weight of the evidence.
>
> [IV.] Because no written complaint was created, filed and served upon Appellant the trial court lacked subject matter jurisdiction to adjudicate the contempt allegation. Appellant's conviction is therefore void.

## III. Analysis

### A. Contempt of court

{¶ 11} Contempt of court is "disobedience of an order of a court" and "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. Courts have inherent and statutory

authority to punish contempt. *RRL Holding Co. of Ohio, L.L.C. v. Stewart*, 2020-Ohio-199, ¶ 31 (10th Dist.).

{¶ 12} Contempt is classified as either direct or indirect, with direct contempt occurring in the presence of the court in its judicial function and indirect contempt involving behavior outside the presence of the court that demonstrates lack of respect for the court or its orders. *Id.* at ¶ 32. For direct contempt, the law provides that "[a] court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01. However, in cases of indirect contempt, "a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel." R.C. 2705.03.

{¶ 13} Contempt is also classified as criminal or civil; the distinction is made " 'not on the basis of punishment, but rather, by the character and purpose of the punishment.' " *Stewart* at ¶ 33, quoting *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). Criminal contempt "act[s] as 'punishment for the completed act of disobedience, and to vindicate the authority of the law and the court.' " *Id.*, quoting *Brown* at 254. Civil contempt, by contrast " ' "is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." ' " *Id.*, quoting *Pugh v. Pugh*, 15 Ohio St.3d 136, 140 (1984), quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

{¶ 14} " 'The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice.' " *Id.* at ¶ 31, quoting *Tomaszczyk* at paragraph two of the syllabus. We will not reverse a finding of contempt absent an abuse of discretion. *Id.* at ¶ 30. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable; however, a court lacks authority to commit an error of law when exercising its discretion. *Campbell v. 1 Spring, L.L.C.*, 2024-Ohio-308, ¶ 10 (10th Dist.).

### B. Whether the trial court abused its discretion by summarily punishing Brown for contempt

{¶ 15} Brown argues in his first assignment of error that the trial court abused its discretion by summarily punishing him for direct contempt based on conduct that occurred outside the court's presence. Brown asserts that because the court lacked personal

knowledge of the alleged conduct, a written complaint, notice, and an opportunity to be heard were required before the trial court could hold him in contempt.

{¶ 16} The Supreme Court of Ohio has held that "[w]here judges have no personal knowledge of the alleged act of contempt because of its commission beyond the court's actual physical presence, the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, *should be strictly adhered to.*" (Emphasis added.) *State ex rel. Seventh Urban, Inc. v. McFaul*, 5 Ohio St.3d 120, 122 (1983). In *McFaul*, there was a physical altercation between opposing parties while awaiting a hearing in the court of appeals before the judges entered the courtroom. *Id.* at 121. Although the judges were not in the courtroom at the time of the altercation, the court's bailiff and two court reporters were present. *Id.* When the judges entered the courtroom, one of the parties advised them of the incident and orally moved that the other party be cited for contempt; he also filed a written motion to show cause why the other party should not be found in contempt. Two weeks after the incident, the court of appeals held a full evidentiary hearing on the written complaint and found the offending party guilty of direct criminal contempt beyond a reasonable doubt. *Id.* at 122. On appeal, the Supreme Court affirmed the contempt ruling, holding that striking someone who was in the courtroom on court business, when the act occurred in the presence of the court's bailiff and court reporters, was a direct contempt in the constructive presence of the court. *Id.* at 123. Also, as noted above, the court held that because the alleged act of contempt occurred outside the judges' physical presence, it was necessary to follow the procedure set forth in R.C. 2705.03, which the appellate court had done. *Id.* at 122.

{¶ 17} The Supreme Court of Ohio recently relied on *McFaul* to hold that "[r]egardless of the classification [of contempt], '[w]here judges have no personal knowledge of the alleged act of contempt because of its commission beyond the court's actual physical presence,' the alleged contemnor is entitled to a hearing and an opportunity to answer the charge and present evidence." *In re Disqualification of Ruehlman*, 2024-Ohio-1306, ¶ 37, quoting *McFaul* at 122. Other appellate courts have likewise held that summary proceedings are not appropriate when the alleged contemptuous conduct occurred outside the court's physical presence. *See In re Chambers*, 2019-Ohio-3596, ¶ 28-

29 (1st Dist.) (acknowledging that direct contempt can include misconduct occurring in the constructive presence of the court but holding that "[t]he mode of proceeding in such a case must be the same as in a case involving indirect contempt, because it is the judge's personal knowledge that allows for the use of summary procedures when acting on the contempt"); *State v. T.F.*, 2019-Ohio-1039, ¶ 15 (9th Dist.) ("Here, although the alleged conduct could be properly classified as direct contempt, the incident only occurred in the constructive presence of the court, and therefore summary proceedings under R.C. 2705.01 were not appropriate."); *State v. Stegall*, 2012-Ohio-3792, ¶ 42 (1st Dist.) (reversing summary contempt judgment where "[t]he record demonstrates that the judge had not heard the offending comment and had relied on information provided by the bailiff to make the finding of contempt").

{¶ 18} It is undisputed that Brown made his comment outside the courtroom and outside the physical presence of the trial judge.[2] Therefore, the trial court had no personal knowledge of what occurred and relied on statements from Smith, Dixon, and Brown to find Brown in contempt. Because the trial court lacked personal knowledge of the allegedly contemptuous conduct, it was required to strictly adhere to the notice and hearing requirements of R.C. 2705.03. *McFaul* at 122. Although the trial court conducted a hearing on September 19, 2023, and Brown's counsel was present at the hearing, there was no written contempt charge filed with the clerk of court and no entry was made upon the journal. Under these circumstances, the trial court abused its discretion by summarily punishing Brown in contempt without satisfying the procedural requirements of R.C. 2705.03.

{¶ 19} Accordingly, we sustain Brown's first assignment of error.

## C. Brown's remaining assignments of error

{¶ 20} In his remaining assignments of error, Brown argues the trial court violated his right to due process, that the contempt finding was not supported by sufficient evidence and was against the manifest weight of the evidence, and that the judgment was void for

---

[2] Plaintiff-appellee, State of Ohio, generally takes a neutral position in this appeal but urges us to hold that the incident occurred within the trial court's constructive presence because Dixon was acting as an "officer of the court" in her role as Smith's trial counsel. However, we need not resolve this question because, as explained herein, the trial court erred by summarily punishing Brown for contempt when it lacked personal knowledge of the alleged act of contempt.

lack of subject-matter jurisdiction. Having concluded that the trial court abused its discretion by summarily holding him in contempt without satisfying the procedural requirements of R.C. 2705.03, Brown's other arguments are rendered moot. Accordingly, we dismiss as moot Brown's second, third, and fourth assignments of error.

## IV. Conclusion

{¶ 21} For the foregoing reasons, we sustain Brown's first assignment of error and dismiss as moot his second, third, and fourth assignments of error. We reverse the judgment of the Franklin County Court of Common Pleas finding Brown in contempt and imposing sanctions, and remand this matter to that court with instructions to vacate that order.

*Judgment reversed and remanded with instructions.*

JAMISON, P.J., and EDELSTEIN, J., concur.

_____